D & R STAR, INC., Respondent,

v.

WORLD BOWLING, INC., Harvey Cheever, Loren Kaiser, Leslie D. Cheever, Roundbank, Respondents,

Gene R. Ackland, et al., Appellants,

John Doe, et al., Defendants.

No. C3–00–739.

Court of Appeals of Minnesota.

Nov. 21, 2000.

Mark E. Fosse, Eric D. Larson, Dunlap & Seeger, P.A., Rochester, for respondent D & R Star.

Keith L. Deike, Patton, Hoversten & Berg, P.A., Waseca, for appellants.

James J. Dailey, Dailey Law Office, Mankato, for respondent Harvey Cheever.

Robert E. Schmidt, Schmidt Law Office, Ltd., Waseca, for respondent Roundbank.

Leslie D. Cheever, Rothsay, pro se respondent.

Loren Kaiser, Albert Lea, pro se respondent.

Considered and decided by KALITOWSKI, Presiding Judge, AMUNDSON, Judge, and HALBROOKS, Judge.

## OPINION

KALITOWSKI, Judge.

Appellants Gene and Theresa Ackland challenge the district court's order for partial summary judgment in favor of D & R Star, Inc. Appellants contend the district court erred in determining that there was no genuine issue of material fact regarding whether D & R Star, Inc. had knowledge of the contents of appellants' misfiled U.C.C.–1 financing statement.

## FACTS

During the months of March, April, and May of 1998, World Bowling, Inc., which included Harvey Cheever, Loren Kaiser, and Leslie Cheever, discussed purchasing Waseca Bowler's World and its contents from appellants. On May 22, 1998, World Bowling and appellants signed a purchase agreement for the sale.[1] The agreement stipulated that Leslie Cheever and Loren Kaiser would purchase the contents of the bowling alley from appellants for an aggregate total of $160,000. The agreement stated that appellants would take a security interest in the contents of the bowling alley and included the principal address of World Bowling, the address of the bowling alley, and the names and signatures of all the parties. The agreement also included a security agreement covering the contents of the bowling alley, and a descriptive list of the contents.

During May and June of 1998, Loren Kaiser met with Richard Hawkins, the president of D & R Star, Inc. (respondent), to obtain additional funds for the purchase of the bowling alley and its contents. Hawkins and Kaiser met approximately five times to discuss the upcoming transaction. Kaiser explained to Hawkins that appellants were selling the bowling alley contents for $160,000 with a $40,000 down payment. Hawkins reviewed the purchase agreement two to three weeks prior to the planned closing date of June 24, 1998. Hawkins admits that he knew World Bowling was purchasing the bowling alley from appellants, but denies knowing the specifics of the transaction.

Hawkins told Kaiser that he knew appellants and that he was familiar with the bowling alley and its contents. Hawkins also explicitly instructed Kaiser not to mention respondent's involvement in the sale to appellants. Hawkins explained that prior business disagreements with Gene Ackland could end the sale if Ackland found out respondent was involved.

Later, Hawkins asked Kaiser to send a copy of the purchase agreement to respondent's attorneys. Kaiser sent the purchase agreement with the security agreement attached. On June 24, 1998, World Bowling and appellants met to close on the sale of the bowling alley and its contents. The sale was not finalized on June 24, 1998, because World Bowling was awaiting the receipt of funds from respondent. Appellants still did not know of respondent's involvement. The next day respondent transferred $100,000 to World Bowling. In exchange, World Bowling executed a security agreement with respondent for the contents of the bowling alley. Later that day, the sale of the bowling alley and its contents was finalized. World Bowling then executed a security agreement in favor of appellants for the contents of the bowling alley.

On June 30, 1998, appellants improperly filed their U.C.C.–1 financing statement with the Waseca County recorder's office. On July 2, 1998, respondent properly filed its U.C.C.–1 with the Minnesota Secretary of State.

World Bowling subsequently defaulted on its loan with respondent and its purchase agreement with appellants. Respondent filed a summons and complaint on January 24, 2000, against World Bowling, appellants, and others who are not parties to this appeal. The complaint requested that the district court determine whether respondent or appellants had the

---

1. The purchase agreement included the sale of the bowling alley building and property, but this appeal involves only the personal property.

senior perfected security interest in the personal property at issue. This determination turned on whether respondent had "knowledge of the contents" of appellants' misfiled U.C.C.–1 financing statement, thereby making it effective against them pursuant to Minn.Stat. § 336.9–401(2) (1998).

Following respondent's motion for partial summary judgment the district court ruled in favor of respondent, concluding that as a matter of law respondent did not have knowledge of the contents of appellants' misfiled U.C.C.–1. Subsequently, the court issued an amended order allowing appellants to immediately appeal the partial summary judgment pursuant to Minn. R. Civ. P. 54.02.

## ISSUE

Did the district court err in determining there was no evidence in the record to raise a genuine issue of material fact as to whether respondent had knowledge of the contents of appellants' misfiled U.C.C.–1 financing statement pursuant to Minn.Stat. § 336.9–401(2) (1998)?

## ANALYSIS

■ This court asks two questions on an appeal from summary judgment: "(1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990) (citation omitted). This court must "view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993) (citation omitted).

■ The district court concluded there were no genuine issues of material fact because there was no evidence in the record to show that respondent had knowledge of the contents of appellants' misfiled U.C.C.–1 financing statement. This conclusion was based on the district court's definition of the phrase "knowledge of the contents of such financing statement" in Minn.Stat. § 336.9–401(d)(2) (1998). Be-

cause this is a legal determination, our review of the district court is de novo. *See Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998) (holding that statutory construction is a question of law, which this court reviews de novo).

■ Generally, a creditor perfects a security interest in personal property by filing a U.C.C.–1 with the office of the county recorder or the Secretary of State. Minn.Stat. § 336.9–401(1)(a)–(d) (1998). Here, all parties agree that appellants' U.C.C.–1 was improperly filed with the Waseca County recorder's office on June 30, 1998, and therefore unperfected. Respondent properly filed its U.C.C.–1 with the Secretary of State on July 2, 1998, thereby perfecting its interest.

■ Generally, respondent's perfected security interest would have priority over any unperfected security interests. Minn. Stat. § 336.9–401(1)(a)–(d). But the U.C.C. specifically provides a good-faith exception for creditors who misfile:

> A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this article and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

Minn.Stat. § 336.9–401(2) (1998). The fifth paragraph of the comment to section 336.9–401 states that the good-faith exception "rejects the occasional decisions that an improperly filed record is ineffective to give notice even to a person who knows of it." Minn.Stat. Ann. § 336.9–401 U.C.C. cmt. at 5 (West Supp.2000).

The Minnesota enactment of the U.C.C. specifies that "knowledge," as used in the Code, is defined as "actual" knowledge. Minn.Stat. § 336.1–201(25) (1998). And

section 336.1–201(25) provides that actual knowledge is the equivalent to notice.

■ Prior versions of U.C.C. 9–401(2) required "knowledge of 'the filing.'" 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 31–17 at 195 (4th ed.1995). The removal of the word "filing" from the current law means that knowledge that the misfiled financing statement was filed is no longer required, but knowledge of what is contained in the financing statement is required. *See generally In re Enark Industries, Inc.,* 86 Misc.2d 985, 383 N.Y.S.2d 796, 797–98 (App.Term 1976) ("The Code does not require that the [holder of the perfected security interest] see the statement filed or even know of the filing."). *Accord Security Finance Group, Inc. v. United States,* 706 F.Supp. 83, 85 (D.D.C.1989).

Although there are no Minnesota cases addressing the definition of the term "knowledge of the contents of such financing statement," the discussion of financing statements and section 336.9–401(2) in *Production Credit Ass'n of West Cent. Minnesota v. Bartos,* 430 N.W.2d 238 (Minn.App.1988), is instructive. A valid U.C.C.–1 includes the signatures and addresses of the debtor and the secured party, and a description of the collateral. Minn.Stat. § 336.9–402(1) (1998). A U.C.C.–1 provides "general notice or warning [to nonparties] that certain collateral might already be encumbered * * *" and it puts subsequent creditors on notice to investigate further. *Bartos,* 430 N.W.2d at 241 (comparing a U.C.C.–1 to a security agreement, the latter requiring a higher level of specificity); *see also In re Komfo Products Corp.,* 247 F.Supp. 229, 234 (E.D.Pa.1965) (stating that the purpose behind the filing rules is to put subsequent creditors on notice).

Applying the discussion in *Bartos* to the issue presented here, we conclude that a holder of a perfected security interest is charged with knowledge of the contents of a misfiled U.C.C.–1 under section 336.9–401(2), when it has actual knowledge of the critical information required in a properly filed U.C.C.–1. *See* Minn.Stat. § 336.9–402(1). This critical information includes a general description of the collateral encumbered, and the names and addresses of the debtor and secured party. *See id.*

Other jurisdictions have reached the same conclusion in construing the phrase "knowledge of the contents." *See In re Mistura, Inc.,* 22 B.R. 60, 34 U.C.C. Rep. Serv. 768, 769–70 (9th Cir.BAP 1982) (stating that the trend appears to be toward an expansive view of U.C.C. 9–401(2)). In *Mistura,* the appellate court remanded so a jury could determine whether the perfected creditor had knowledge of the required contents of the misfiled creditor's U.C.C.–1. *Id.* 22 B.R. 60, 34 UCC Rep. Serv. at 770–71. *Mistura* stated that the creditor does not have to actually see the misfiled U.C.C.–1 or know that it was misfiled if the creditor had actual knowledge of all the information that would be required in a properly filed U.C.C.–1. 22 B.R. 60, 34 U.C.C. Rep. Serv. at 772; *see also First Nat'l Bank of Glasgow v. First Security Bank of Mont.,* 222 Mont. 118, 721 P.2d 1270, 1274 (1986) (holding that "knowledge of the contents" requires the perfected creditor to "know the names of the parties, their addresses, and a description of the collateral").

■ Applying our construction of the statutory language at issue to the facts here leads us to conclude that the district court erred in finding there were no genuine issues of material fact. Kaiser's affidavit claims that respondent discussed and viewed the May 22, 1998, purchase agreement and its attachments. Kaiser's affidavit also alleges that respondent's attorneys received a copy of the purchase agreement and its attachments. Hawkins' affidavit, however, claims that respondent was aware World Bowling was purchasing the bowling alley from appellants but was never informed of the details of the purchase.

We reject respondent's contention that it could not have actual knowledge of appellants' misfiled U.C.C.–1 because any details it knew about the purchase of the

bowling alley and its contents took place before the U.C.C.–1 was filed. First, respondent had notice that the bowling alley contents were encumbered because it was involved with the sale until the time of closing. Second, the plain language of section 336.9–401(2) does not require that knowledge of the contents be gained only after the U.C.C.–1 is misfiled and we may not add this requirement to the statute. *Martinco v. Hastings,* 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963) (holding that "the courts cannot supply that which the legislature purposely omits or inadvertently overlooks").

Finally, both the district court and respondent cite caselaw dealing with mechanic's liens under Minn.Stat. § 514.05 to support a strict construction of the knowledge requirement. But, section 514 .05 contains different statutory language and definitions than the U.C.C. Section 514.05, subdivision 1, allows a creditor with a lien against an owner of land to take preference over any other encumbrances on that land, "unless the lienholder had *actual notice* thereof." (Emphasis added.) Unlike section 514.05, the U.C.C. only requires "actual knowledge," not "actual notice." Minn.Stat. § 336.1–201(25) (stating that actual knowledge is the equivalent to notice). We conclude that because this case is controlled by the U.C.C., the mechanic's lien statute and cases are not controlling in defining actual knowledge.

### DECISION

The district court erred in determining there was no evidence in the record raising a genuine issue of material fact concerning whether D & R Star, Inc. had knowledge of the contents of appellants' misfiled U.C.C.–1. We therefore reverse the district court's order for partial summary judgment.

**Reversed.**