**FIN AG, INC., Respondent,**

v.

**HUFNAGLE, INC., f/k/a P & H Trucking, et al., Defendants,**

**Kent Meschke Poultry Farms, Inc., Appellant.**

**No. A04–2176.**

Court of Appeals of Minnesota.

July 19, 2005.

Jon R. Brakke, Vogel Law Firm, Fargo, ND, for respondent.

Britton D. Weimer, Blackwell Igbanugo, P.A, and John G. Berg, Minneapolis, MN, for appellant.

Considered and decided by LANSING, Presiding Judge; STONEBURNER, Judge; and MINGE, Judge.

## OPINION

LANSING, Judge.

The district court granted summary judgment for a secured creditor on its claim against a commercial buyer of farm products for conversion of its security interest in farm products. In this appeal, the buyer challenges the secured creditor's capacity to sue under Minn.Stat. § 303.20 (2004), asserts that the buyer takes free of

the secured creditor's interest under the Food Security Act (FSA), and claims that the secured creditor did not properly perfect its interest when it misfiled its financing statements. Because we conclude that the buyer's challenge to the secured creditor's capacity to sue has both procedural and evidentiary deficiencies, that the secured creditor satisfied an exception that preserves its security interest under the FSA, and that the secured creditor falls within the good-faith exception for misfiling its UCC financing statement, we affirm the district court's judgment but remand to the district court for determination of a motion ancillary to this appeal.

## FACTS

Larry Buck is a farmer in Itasca County who raises crops, including corn and beans, for sale. To obtain financing for his farming operation, Buck signed a promissory note and security agreement with Fin Ag, Inc. in April 1999. As collateral, Buck granted Fin Ag a security interest in, among other things, his crops and farm products.

From the fall of 1999 through 2000, Buck sold his 1999 crops to several buyers, including Kent Meschke Poultry Farms, Inc. Meschke issued checks during this same time period to Mickey Buck, Ryan Buck, Mark Tooker, and Paul Zuk for the purchase of corn. Mickey and Ryan Buck are Buck's minor children, and Buck concedes that he was selling crops in their names. Tooker and Zuk were employees of Buck. It is the checks that Meschke issued to Tooker, Zuk, and the two Buck children for the corn purchases that are at the center of this litigation.

Buck encountered financial difficulty and was unable to pay the balance of the loan. Fin Ag and Crop Production Services, Inc. (CPS), another financing corporation with a secured interest in Buck's crops, litigated the priority of their conflicting security interests. The district court granted partial summary judgment in favor of CPS, concluding that its interests had priority over Fin Ag's.

Fin Ag sued Meschke and other purchasers of Buck's crops, seeking to enforce its security interest in the crops. Fin Ag moved for summary judgment. Meschke opposed the motion, asserting that, as a South Dakota corporation transacting business in Minnesota, Fin Ag could not maintain an action without a certificate of authority and that, under the FSA, Meschke was entitled to take the corn free of Fin Ag's interest. The district court granted Fin Ag's motion and ordered Meschke to pay Fin Ag $45,573.09 in damages. Meschke now appeals.

## ISSUES

I. Has the farm-product buyer satisfied procedural and evidentiary requirements to create a disputed issue of material fact under Minn.Stat. § 303.20 (2004) on whether the secured creditor, a foreign corporation, has the capacity to sue in Minnesota courts?

II. Does a buyer who purchases a farm product in the ordinary course of business take free of a secured creditor's interest under the Food Security Act when it receives notice of the interest from the secretary of state and does not obtain waiver of the interest?

III. If a party files its UCC financing statement in the wrong county in good faith, is its security interest nonetheless enforceable against a party with actual knowledge of the security interest?

## ANALYSIS

■ On appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn.2001). In assessing the evidence, we view it in the light most favorable to the party against whom judgment has been granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). Our review of a summary judgment based on the application of statutory provisions to undisputed facts is de novo. *Wiegel v. City of St. Paul*, 639 N.W.2d 378, 381 (Minn.2002).

### I

A foreign corporation that transacts business in Minnesota may not maintain an action in Minnesota courts unless it has obtained a certificate authorizing the transaction of business. Minn.Stat. § 303.20 (2004). Fin Ag, incorporated under the laws of South Dakota, is a foreign corporation. Fin Ag concedes that it has not obtained a certificate of authority to do business in Minnesota, but contends that Meschke's challenge has both procedural and evidentiary defects because Meschke did not assert the lack of capacity as a defense in its pleadings and because Meschke has not shown that the extent of Fin Ag's activities in Minnesota require it to obtain a certificate of authority. The district court rejected Meschke's challenge but did not indicate the basis for its rejection.

■ We first consider whether Meschke procedurally waived its objection by failing to assert it in its answer. Meschke claims that Fin Ag's failure to obtain a certificate to transact business in compliance with Minn.Stat. § 303.20 deprives Fin Ag of standing and divests the court of subject-matter jurisdiction. We disagree. The certificate-of-authority requirement regulates a foreign corporation's ability to maintain a cause of action in Minnesota. Minn.Stat. § 303.20. Subject-matter jurisdiction governs a court's authority to consider an issue and standing implicates a party's ability to bring a particular cause of action, but the "right to maintain an action" relates to the capacity to sue. *Cochrane v. Tudor Oaks Condo. Project*, 529 N.W.2d 429, 433–34 (Minn. App.1995), *review denied* (Minn. May 31, 1995).

■ Unlike challenges to standing and subject-matter jurisdiction, a challenge to a litigant's capacity to sue is waivable. *See id.* (observing that "the right to challenge capacity to sue is waived if not timely asserted"). Failure to challenge in the answer a plaintiff's capacity, without subsequent amendment of the pleading, may result in a waiver of the issue. *See* Minn. R. Civ. P. 9.01 (restricting capacity-to-sue challenge to negative averment in pleadings), 12.02 (requiring assertion of defenses in responsive pleading); *Risvold v. Gustafson*, 209 Minn. 357, 361, 296 N.W. 411, 413 (1941) (noting that challenge to foreign corporation's capacity to sue is waived if not raised in answer); *Lehigh Valley Coal Co. v. Gilmore*, 93 Minn. 432, 434, 101 N.W. 796, 797 (1904) (requiring that challenge to capacity be raised in pleadings). Meschke's failure to challenge Fin Ag's capacity to sue in its answer or to seek amendment provides a sufficient basis for the district court's rejection of Meschke's request to dismiss for failure to comply with the requirement to obtain a certificate of authority.

The record also provides an evidentiary basis for rejecting Meschke's argument that Fin Ag lacked capacity to sue. Meschke failed to present adequate evidence to support its claim that Fin Ag does not fall within an exception for for-

eign corporations that participate in limited or particular types of transactions in Minnesota. *See* Minn.Stat. § 303.03 (2004) (listing activities that qualify as exceptions to certificate-of-authority requirement). Fin Ag asserts that its limited activities of making loans and collecting on these loans qualify under Minn.Stat. § 303.03 as an exception to the certificate-of-authority requirement. This exception provides that a "foreign corporation shall not be considered to be transacting business in this state . . . solely by reason of carrying on" the activities of issuing loans and collecting them. Minn.Stat. § 303.03(f), (g). Because Meschke failed to present evidence that created a disputed issue of material fact that Fin Ag's activities in Minnesota exceeded this exception, the record fails to demonstrate an evidentiary as well as a procedural basis that can withstand summary judgment, and we affirm the district court's ruling on this issue.

## II

The UCC, as adopted in Minnesota and other states, permits buyers in the ordinary course of business to take free of a secured interest created by the seller. Minn.Stat. § 336.9–307 (1998); U.C.C. § 9–307 (1972). The version of the UCC in effect at the time of Meschke's transaction, however, included an exception for farm products, which mandated that a buyer of farm products still took subject to the secured interest. U.C.C. § 9–307; Mark V. Bodine, *Clear Title: A Buyer's Bonus, A Lender's Loss–Repeal of UCC § 9– 307(1) Farm Products Exception by Food Security Act § 1324, 7 U.S.C. § 1631,* 26 Washburn L.J. 71, 74 (1986) (observing that UCC, prior to its revision, did not permit buyer of farm products to take free of secured interest). The farm-products rule, or farm-products exception, varied from state to state and often resulted in buyers paying twice for the goods: once to

the farmer and again to the farmer's creditor. *See* Charles W. Wolfe, Comment, *Section 1324 of the Food Security Act of 1985: Congress Preempts the "Farm Products Exemption" of Section 9–307(1) of the Uniform Commercial Code,* 55 UMKC L.Rev. 454, 456 (1987) (discussing problems with farm-products exceptions and purposes behind FSA).

To provide uniformity in the laws governing secured transactions in farm products, Congress, in 1985, passed the Food Security Act (FSA), which has remained substantially unchanged since its enactment. 7 U.S.C. § 1631 (1999 & Supp. 2005); Bodine, *supra,* at 79. The FSA was designed to prevent buyers of farm products from paying twice. 7 U.S.C. § 1631(a)(2) (2004) (stating congressional findings justifying passage of statute); *AG Servs. of Am., Inc. v. United Grain, Inc.,* 75 F.Supp.2d 1037, 1042 (D.Neb.1999). The FSA specifies when a farm-product buyer takes free of a seller's security interest:

> Except as provided in subsection (e) and notwithstanding any other provision of Federal, State, or local law, a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest.

7 U.S.C. § 1631(d).

The FSA expressly preempts the farm-product rule in every state and, subject to certain exceptions, permits a buyer to take free of the secured creditor's interest regardless of whether the interest was perfected or whether the buyer knew of the interest. *See* Wolfe, *supra,* at 463–64 (explaining that clear language of FSA and its legislative history show that it preempts

section 307 of UCC Article 9 and state law related to security interests in farm products). The FSA sets forth a series of exceptions to this general rule in subsection (e).

Because of the complexity of the preemption provisions and the resulting interaction between the FSA and the UCC, it is necessary to proceed through several layers of analysis to determine whether summary judgment was proper. The threshold determination is whether the FSA applies. If the FSA applies, we must then determine whether Fin Ag falls within an exception that would continue to protect Fin Ag's interest by making Meschke's corn purchases subject to Fin Ag's security interest. Finally, if an exception applies, we then consider the validity of the security interest under Minnesota law. *See* Minn.Stat. § 336A.05 (2004) (stating that "[f]iling under this chapter [Farm Product Liens and Financing Statements] does not affect the perfection or priority of security interests filed under the Uniform Commercial Code").

■ Whether Meschke's purchase of the corn falls within the scope of the FSA hinges on whether Meschke is a buyer in the ordinary course of business and whether the corn is a farm product. Under the FSA, "a person who, in the ordinary course of business, buys farm products from a person engaged in farming operations who is in the business of selling farm products" is a buyer in the ordinary course of business. 7 U.S.C. § 1631(c)(1). The FSA defines farm product as "an agricultural commodity such as wheat, corn, soybeans, or a species of livestock ... used or produced in farming operations ... that is in the possession of a person engaged in farming operations." 7 U.S.C. § 1631(c)(5). Thus, the FSA applies to the transactions at issue if someone engaged

in farming operations possessed the corn that Meschke purchased.

■ Because neither the FSA nor Minnesota's implementation statute define possession, we examine the term's meaning under Minnesota property law. When a property owner intentionally gives direct physical control of the property to another party for the purpose of having him do some act for the owner, the owner retains constructive possession of the property. *Jacobson v. Aetna Cas. & Sur. Co.*, 233 Minn. 383, 388, 46 N.W.2d 868, 871 (1951). And "the party to whom bare physical control of the property has been entrusted for the owner's purpose does not have possession but only custody." *Id.; see also First Nat'l Bank v. Lamoni Livestock Sales Co.*, 417 N.W.2d 443, 447–48 (Iowa 1987) (concluding that possession in context of defining "farm products" means ownership); *Goodrich Silvertown Stores v. Collins*, 167 Or. 40, 115 P.2d 332, 335 (1941) (determining that temporary custody of property does not amount to possession, which requires additional right of proprietorship). Therefore, a party must have more than temporary custody to have possession of the property.

■ Meschke acknowledges that Buck was engaged in farming operations but asserts that a genuine issue of material fact exists on possession because the evidence is disputed on whether Buck possessed the corn that Meschke purchased. A genuine issue of fact may only be established by "substantial evidence." *Murphy v. Country House, Inc.*, 307 Minn. 344, 351, 240 N.W.2d 507, 512 (1976) (quotation omitted). Evidence meets the "substantial" standard when it "sustains, with equal justification, two or more reasonably inconsistent inferences." *E.H. Renner & Sons, Inc. v. Primus*, 295 Minn. 240, 243, 203 N.W.2d 832, 835 (1973). No genuine issue of material fact exists, however,

"when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn.1997).

The evidence is undisputed that Buck grew the corn that was sold to Meschke, that Meschke had repeatedly bought corn from Buck during the same time period that it purchased the corn for which it paid Buck's children and employees, and that Meschke had previously issued joint checks to Buck and Fin Ag for its purchases from Buck. Meschke presented two affidavits and cancelled checks as evidence to establish that someone other than Buck possessed the corn.

■ The checks, drawn on Meschke's account, are payable to Buck's two children and his two employees. The checks have limited probative value on the issue of possession, and that value is significantly diminished by the fact that the checks were signed over to Buck and deposited in Buck's bank account. The affidavits also lack significant probative value. Meschke's affidavit states that "persons delivering the corn" told Meschke or his employees that they owned the grain. Meschke's belief about who owned the corn, although potentially related to notice, does not determine possession for purposes of FSA application. Furthermore, any probative value is severely limited in light of Buck's previous sales relationship with Meschke, the familial and employment relationships of the supposed "sellers," and the youth of Buck's children, one of whom was about five years old at the time of sale. This evidence is also diminished by Buck's admission that he sold crops in the name of his children, indicating that he retained ownership and constructive possession of the corn. At most, the children and employees had temporary custody of the corn for the purposes of delivering it to Meschke; this involvement does not rise to the level of possession. Meschke's only remaining evidence to demonstrate disputed possession is Buck's affidavit, in which Buck asserts that he transferred beans to his employees in exchange for their services. But the only produce at issue in this appeal is corn; any transfer of beans does not establish possession of the corn.

Meschke's evidence is not sufficiently probative of possession to establish the existence of a triable issue on whether someone other than Buck possessed the corn. Therefore the district court properly concluded that the FSA applies. Under the FSA Meschke takes free of Fin Ag's interest unless Fin Ag falls within one of the listed exceptions.

The listed exceptions under subdivision (e) differentiate between states that have implemented a direct-notice system and those that have created a central filing system. 7 U.S.C. § 1631(e)(1)-(3). Subdivision (e) includes two exceptions for states with centralized filing systems. Minnesota has enacted a centralized filing system implementing legislation consistent with the FSA. Minn.Stat. §§ 336A.01–.16 (2004). Therefore, either the exception in subsection (e)(2) or (e)(3) may apply, and we examine each in turn.

■ Subsection (e)(2) provides that a buyer takes subject to a secured interest if two conditions are met: the secured party files an effective financing statement (EFS), and the buyer fails to register with the secretary of state before purchasing the farm product. 7 U.S.C. § 1631(e)(2). Although the use of the term "financing statement" invites a connection to the financing statements required under the UCC, an EFS under the FSA is a distinct filing requirement. *See* Minn.Stat.

§ 336A.03, subd. 2(c) ("The effective financing statement and lien notice may not be combined with a Uniform Commercial Code financing statement form."); *see also* Linda J. Rusch, *Farm Financing Under Revised Article 9*, 73 Am. Bankr.L.J. 211, 246 (1999) (observing that requirements of FSA and UCC are distinct and that perfection of interest under UCC does not satisfy FSA's notice requirements).

In Minnesota, a secured creditor must file an EFS with the secretary of state to enforce its interest. *See* 7 U.S.C. § 1631(c)(2), (4) (requiring creditor in state with centralized filing system to file with secretary of state); *see also* Minn.Stat. § 336A.04 (requiring creditor to file EFS with secretary of state). The secretary of state then assembles a database that includes the debtor, the farm product, and the contents of any filed EFS. 7 U.S.C. § 1631(c)(2) (1999 & Supp.2005). This information is sent to any registered buyer who has an interest in the farm product. 7 U.S.C. § 1631(c)(2)(E).

The record indicates that Fin Ag filed an EFS with the secretary of state on May 28, 1999. The record also indicates that Meschke properly registered with the secretary of state as a buyer. In its affidavit, Meschke states that the secretary of state provides it with records of the central filing system "as a registered grain buyer." This evidence is sufficient to establish that Fin Ag cannot rely on the exception in subsection (e)(2).

■ Under subsection (e)(3), a buyer takes subject to a secured interest if the buyer (1) receives notice from the secretary of state that identifies the seller and specifies that the farm product is subject to a secured interest and (2) does not secure a waiver by the secured party before performing any payment obligation. 7 U.S.C. § 1631(e)(3). Nothing in the record supports a claim that Meschke ob-

tained a waiver of Fin Ag's interest before issuing payment.

The remaining question is whether Meschke received notice from the secretary of state that Fin Ag had a secured interest in Buck's corn. Meschke's affidavit indicates that it received records and updates from the secretary of state pertaining to documents in the centralized filing system. Because Fin Ag properly filed an EFS with the secretary of state, Meschke, as a registered buyer, presumptively received a record of Fin Ag's interest in Buck's crops.

Notably, Meschke does not deny having knowledge of Fin Ag's interest in Buck's crops or receiving records from the secretary of state. Instead, the record shows that Meschke had repeatedly issued checks to both Fin Ag and Buck as copayees, which reflects its awareness that Fin Ag had a secured interest in crops owned by Buck. Consequently, subsection (e)(3) applies to the secured interest, which means that the general rule that the buyer takes free of the secured interest created by the seller does not apply, and Meschke's purchase of the corn is subject to Fin Ag's security interest in Buck's crops.

Because Fin Ag has established that it falls within one of the exceptions, Meschke is not entitled to take free of Fin Ag's valid security interest. The only remaining issue therefore is whether Fin Ag has a valid security interest that was properly perfected under Minnesota law. *See* Bodine, *supra*, at 93–94 (explaining that because UCC rules governing perfection and notice are unchanged, secured party must still perfect its interests under UCC to have enforceable interest).

**III**

■ To perfect a security interest, a party must file a UCC financing statement

at the required filing location. Minn.Stat. § 336.9–401 (1998 & Supp.1999). We apply the law in effect at the time of the transaction at issue. *See Farm Credit Bank v. Ahrenstorff,* 479 N.W.2d 102, 104 (Minn.App.1992) (observing that, in absence of clearly manifested intent to apply statute retroactively, court should analyze case under law in effect at time of transaction).

■ Under Minnesota law as it existed in 1999, the required place of filing depends on the nature of the collateral as well as the identity and residence of the debtor. Minn.Stat. § 336.9–401. When the secured goods are farm products, the statute requires filing in the county of the debtor's residence if the debtor is an individual or organization residing in Minnesota. Minn.Stat. § 336.9–401(1)(b). Good-faith filing in an incorrect location is effective against any person who had knowledge of the contents of the financing statement. Minn.Stat. § 336.9–401(2).

■ Under the UCC, a buyer has notice, or actual knowledge, for purposes of the good-faith exception when the buyer has knowledge of the critical information of a properly filed UCC financing statement. *D & R Star, Inc. v. World Bowling, Inc.,* 619 N.W.2d 772, 776 (Minn.App.2000). "This critical information includes a general description of the collateral encumbered, and the names and addresses of the debtor and secured party." *Id.*

■ Fin Ag asserts that Meschke waived the issue of whether Fin Ag filed in an incorrect filing location because it did not raise it in opposition to summary judgment, but Meschke did raise the issue in its oral argument opposing the summary-judgment motion. We consider this discussion sufficient to permit review because the issue was argued by the litigants and considered by the district court.

■ Fin Ag filed its UCC statements in Hubbard County and Wadena County, and with the secretary of state. Fin Ag, however, did not file in Buck's county of residence, Itasca County. While Fin Ag undeniably filed in an incorrect county, Meschke has not disputed that Fin Ag acted in good faith, and no evidence suggests a lack of good faith. If Meschke had notice of Fin Ag's interest in the corn before purchasing it, Fin Ag's claim was perfected under Minnesota law.

Copies of checks issued to Buck and Fin Ag as copayees indicate that Meschke was aware that Fin Ag had an interest in Buck's crops, including the corn. In addition, Meschke's affidavit stating that it was a registered buyer reasonably supports a dispositive inference that Meschke received EFS records from the secretary of state. These records establish Fin Ag's interest in Buck's crops. In light of the transactions with Buck, the age of the dependent children, and the absence of evidence that someone other than Buck owned the corn, Meschke cannot reasonably disclaim notice or knowledge of Fin Ag's interest. Because Fin Ag's misfiling of the UCC financing statement was in good faith and Meschke's prior dealings with Buck and its registered-buyer notices establish its knowledge of the contents of Fin Ag's EFS filing, Fin Ag has demonstrated, as a matter of law, its perfected interest in the corn as against Meschke.

Meschke's final challenge to the validity of Fin Ag's security interest relates to whether CPS has priority in its interest over Fin Ag. Although the district court determined that CPS's interest had priority, an unsigned document in the file assigns CPS's interest to Fin Ag. Meschke disputes the effectiveness of the unsigned document. This appeal, however, involves only the validity of Fin Ag's security interest against Meschke's claims, which is an

inquiry independent of whether Fin Ag's security interest has priority over another security interest. CPS is not involved in this appeal, and Meschke has provided no basis that would allow it to assert a claim on CPS's behalf. Furthermore, the district court in the priority dispute between Fin Ag and CPS reserved the issue of CPS's entitlement to further relief, and this avenue is the proper procedure for resolving any remaining issues on priority. Meschke also raises an issue of whether its entity status is properly designated in the pleadings. This issue was raised during the pendency of the appeal and deferred until the district court could exercise jurisdiction at the conclusion of the appeal. We therefore remand for consideration of this ancillary issue.

## DECISION

Meschke failed to establish a genuine issue of material fact on Fin Ag's capacity to sue and effectively waived the issue by failing to assert it in its answer or by subsequent motion to amend. Fin Ag has also demonstrated, as a matter of law, that Meschke had notice of Fin Ag's secured interest through its prior dealings with Buck and by notice as a registered buyer from the secretary of state. Meschke does not claim that it obtained a waiver of the interest before purchasing the farm product; thus the Food Security Act does not allow Meschke to take free of Fin Ag's secured interest. Finally, although Fin Ag misfiled its financing statement in an incorrect county, the statement is nonetheless effective against Meschke because of Meschke's actual knowledge of the secured interest and because the misfiling was in good faith. We therefore affirm the district court's grant of summary judgment in favor of the secured creditor but remand to allow the district court an opportunity to address a deferred motion that is ancillary to this appeal.

**Affirmed in part, remanded in part.**