2002-NMCA-049

45 P.3d 80

**Joseph GROVER, Plaintiff–Appellant,**

v.

**Barbara STECHEL, Defendant–Appellee.**

**No. 21,988.**

Court of Appeals of New Mexico.

March 15, 2002.

Edmund R. Pitts, Taos, NM, Attorney for Appellant.

D. Vaughn Gangwish, John P. Massey, Albuquerque, NM, Attorneys for Appellee.

*OPINION*

ROBINSON, Judge.

{1} Plaintiff appeals the trial court's dismissal of his complaint for lack of personal jurisdiction and failure to state a claim. We affirm.

## I. Factual and Procedural Background

{2} Plaintiff, Joseph Grover, was stabbed by David Stechel (David), the adult son of Defendant, Barbara Stechel. David was twenty-one years old and receiving significant financial support from Defendant at the time of the incident. Plaintiff filed a complaint against Defendant, alleging one count of negligence, one count of negligence per se, and one count of prima facie tort, all based on Defendant's support of David. Plaintiff alleges that Defendant's relationship with her son created a duty, and that she should have foreseen that her support would result in Plaintiff's injury. Defendant moved to dismiss pursuant to Rule 1–012(B)(2) NMRA 2002, for lack of personal jurisdiction, and (B)(6), for failure to state a claim. The trial court dismissed the complaint on both grounds.

{3} Plaintiff's complaint alleges the following facts. Plaintiff is a resident of Taos, New Mexico. On February 19, 1998, David stabbed Plaintiff in the torso with a knife. From the time David reached the age of majority until the stabbing incident, Defendant provided financial support to him. She also assisted in David's defense against a criminal charge in New York. Defendant relocated David to Taos, made his travel arrangements, and paid for his move. Defendant arranged to have David live with a friend of hers in Taos.

{4} Once David arrived in Taos, Defendant continued to send him money, opened a bank account for him, and made deposits into it with trust funds. Defendant traveled to New Mexico to visit David, and bought him a vehicle. David's girlfriend asked that Defendant stop sending money and told her that David was spending the money she sent on

drugs, but Defendant continued to send money.

{5} When David relocated to Phoenix, Arizona, Defendant visited him there and intended to buy him a business to operate. David's girlfriend informed Defendant that David was abusing drugs, which caused him to be violent. She told Defendant that David needed treatment. Defendant continued to provide financial support to David, including after he was arrested for assaulting his girlfriend in Phoenix. Once David was released on bail, Defendant sent him to Albuquerque, New Mexico to live, and paid his living expenses. David's girlfriend returned to Taos. The stabbing occurred when David drove to Taos and found his then ex-girlfriend with Plaintiff.

{6} Based on these facts, Plaintiff argues that a special relationship existed between Defendant and David. Plaintiff alleges that the relationship gave rise to a duty by Defendant to control the dangerous propensities of her adult son, that she breached that duty, that Defendant should have foreseen that David would injure Plaintiff, and that her continued support of David proximately caused Plaintiff's injury.

{7} The trial court dismissed Plaintiff's complaint, finding that (1) the court lacked personal jurisdiction over Defendant and (2) even if personal jurisdiction had existed, Plaintiff failed to state a claim for relief, because it was not foreseeable to Defendant that her son would injure Plaintiff, therefore there was no duty. The trial court also held that no liability stemmed from Defendant's parental or financial relationship with her adult son.

## II.  Standard of Review

{8} The determination of whether a court has personal jurisdiction over a party is a question of law that is reviewed *de novo*. *Cronin v. Sierra Med. Ctr.*, 2000–NMCA–082, ¶ 10, 129 N.M. 521, 10 P.3d 845. Likewise, the grant of a motion to dismiss pursuant to Rule 1–012(B)(6) is a question of law that is reviewed *de novo*. *Padwa v. Hadley*, 1999–NMCA–067, ¶ 8, 127 N.M. 416, 981 P.2d 1234. In order to test the sufficiency of the complaint, the reviewing court accepts the facts therein as true. *Id.*

## III.  Discussion

{9} Plaintiff maintains that the trial court had personal jurisdiction over Defendant based on NMSA 1978, Section 38–1–16(A)(3) (1971). That section confers jurisdiction over a party that commits a tortious act within this state. Therefore, the question on appeal is the same for the dismissal for lack of jurisdiction under Rule 1–012(B)(2) as it is for the dismissal for failure to state a claim under Rule 1–012(B)(6): Does the complaint, when its facts are taken as true, state a claim for negligence or prima facie tort? We hold that it does not, and affirm the dismissal of the action.

{10} Plaintiff maintains that a special relationship existed between Defendant and David that imposed a duty on Defendant to control her adult son. In support of the existence of a special relationship, Plaintiff contends that because Defendant continued to bankroll David, and because she was on notice that he was using drugs and acting violently, there was a legal special relationship. A special relationship, however, is recognized only under limited circumstances. The circumstances here, that is, Defendant's payment of David's living expenses at the time of the assault on Plaintiff, do not fit into any recognized special relationship, nor do they present a situation that this Court should add to the recognized relationships. Plaintiff cites no New Mexico authority to support the finding of such a special relationship in this case.

{11} As a general rule, an individual has no duty to protect another from harm. *Davis v. Bd. of County Comm'rs*, 1999–NMCA–110, ¶ 12, 127 N.M. 785, 987 P.2d 1172; Restatement (Second) of Torts, § 315 (1965). The Restatement (Second) of Torts (1965) recognizes certain relationships, however, that give rise to such a duty: (1) those involving common carriers, innkeepers, possessors of land; and (2) those who voluntarily or by legal mandate take the custody of another so as to deprive the other of his normal opportunities for protection. *Id.* at § 314(A). While none of these describes the

relationship between the parties here, this list is not exhaustive. *See id.* caveat and cmt. b. In order for Plaintiff to prevail, there must be a special relationship that places on Defendant a legal duty to protect Plaintiff.

{12} In order to create a duty based on a special relationship, the relationship must include the right or ability to control another's conduct. *See* Restatement, *supra*, §§ 316–319 (1964); *see also, e.g., Carney v. Gambel*, 751. So.2d 653, 654 (Fla. 4th DCA 1999). In *Carney*, the court held that where there is no legal right to control a child, there can be no liability imposed on the parent. *See id.* We adopt this approach, as codified in the Restatement. All of the cases Plaintiff relies on contain facts that demonstrate the defendant's control over the third party, an essential element that is absent in this case. *See Estate of Hernandez v. Flavio*, 186 Ariz. 517, 924 P.2d 1036, 1038 (Ariz. Ct.App.1995) (national fraternity organization had knowledge of, and ability to control, chapter's ability to serve alcohol); *Silberstein v. Cordie*, 474 N.W.2d 850, 855–56 (Minn.Ct. App.1991) (son was living with parents when he shot decedent); *Rael v. Cadena*, 93 N.M. 684, 684–85, 604 P.2d 822, 822–23 (Ct.App. 1979) (acknowledging liability of bystander who verbally encouraged assault).

{13} Defendant lived across the country from David at the time of the assault. Plaintiff argues that Defendant retained control over David based on Defendant's financial support of David. We are not persuaded that absent this support, David would not have engaged in the same behavior. While the financial support may have governed where David lived and whether he was gainfully employed, we hold it is too much of a logical leap to conclude that by controlling David's finances Defendant controlled his conduct. In our view, it is quite normal for a mother to stand behind her son, especially when he is experiencing difficult times. While Plaintiff maintains that giving David money made David's crime possible, it could as easily be argued that not helping financially might cause the child to commit a crime to obtain money. We find little support for tort liability in either argument.

{14} Moreover, in *Ventura v. Picicci*, 227 Ill.App.3d 865, 169 Ill.Dec. 881, 592 N.E.2d 368 (1992), the Illinois court rejected the plaintiff's argument that the parent of an adult son should be held liable for the son's injury to plaintiff based on their financial relationship. *Id.* at 370. In *Ventura*, the plaintiff alleged that the defendant paid her son's living expenses, gave him money to buy cocaine and the gun used in the incident, and posted the son's bail, and the court held these facts insufficient to support the plaintiff's claim that the defendant owed her a duty. *Id.* Here, Defendant had even less control over or connection to Plaintiff's injury.

{15} Plaintiff cites to Section 319 of the Restatement to support his position. This too fails to address the circumstances at issue. Section 319 places a duty on those in charge of persons having dangerous propensities, and reads: "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." Again, we hold that under the facts of this case, sending money to a person is not the equivalent of "taking charge" of him. The illustrations accompanying this section demonstrate the intent of the section. The first illustration addresses the negligence of the medical staff of a private hospital when they erroneously allow a contagious patient to leave the hospital. The second involves the escape of a "homicidal maniac" from a private sanitarium for the insane. In those situations, the institutions were "in charge" of their patients in a way not comparable to Defendant's primarily financial relationship with her son.

{16} Plaintiff next attempts to rely on Restatement Section 321. This section creates a duty to act when one's prior act puts another in peril. We cannot say that Defendant's act of sending David money, even if ill-advised under the circumstances, imperilled Plaintiff. What is lacking is foreseeability. Without foreseeability, there can be no duty. *Johnson v. Sears, Roebuck & Co.*, 113 N.M. 736, 737, 832 P.2d 797, 798 (Ct.App.1992). Plaintiff argues that it was

foreseeable that her son would drive from Albuquerque to Taos "to attempt to see his former girlfriend and that he would become dangerous and violent toward any male he found in her company in Taos." This is an unrealistic assessment, based on the facts. At most, Defendant knew her son had a drug problem and violent tendencies. The fact that she supported him financially and "bailed him out" on occasion in no way rendered him in her control, as evidenced by his erratic behavior.

{17} Plaintiff also cites Restatement Section 302(A), which is inapplicable because it involves negligent or reckless third-party conduct. There is no claim that David's assault and battery of Plaintiff was other than intentional. Section 302(B), which addresses intentional behavior, also fails to impose a duty on Defendant. That section requires that the criminal conduct of a third party be a foreseeable result of an act or omission. As stated above, neither the provision of financial support nor the failure to withdraw financial support upon hearing about David's conduct renders the injury to Plaintiff a foreseeable, direct consequence of providing support to David.

{18} We can find no case to suggest that these facts, where David was an adult and not living with or in direct control of Defendant, created a duty on Defendant's part. The authority counsels to the contrary. *See Ventura*, 592 N.E.2d 368, 370 (finding no duty on the part of defendant parent of adult son who shot plaintiff in defendant's house); *see generally* Kimberly C. Simmons, Annotation, *Liability of Adult Assailant's Family to Third Party for Physical Assault*, 25 A.L.R.5th 1 (1994). The only cases in that annotation that found support for the liability of the family members occurred when the child was living in the home of the defendant family members, a factual situation which did not exist in this case. *Id.* at § 5[a]. We affirm the trial court's finding that Defen-

dant had no duty to control David or protect Plaintiff, and that the attack was not foreseeable.

{19} With respect to Plaintiff's Count III, for prima facie tort, the complaint is also flawed. Prima facie tort is an intentional tort. *See Padwa*, 1999–NMCA–067, ¶ 24, 127 N.M. 416, 981 P.2d 1234. Prima facie tort exists only when the defendant's acts meet the following elements: (1) an intentional, lawful act; (2) committed with the intent to injure the plaintiff; (3) causing injury to the plaintiff; and (4) the absence of justification for the injurious act. *Schmitz v. Smentowski*, 109 N.M. 386, 396, 785 P.2d 726, 736 (1990); *Padwa*, 1999–NMCA–067, ¶ 24, 127 N.M. 416, 981 P.2d 1234. Plaintiff does not allege any facts to support his assertion that Defendant intentionally harmed him, only that her acts or omissions created a dangerous situation and permitted David to engage in intentional violence. This is insufficient to support a claim of prima facie tort.

## IV. Conclusion

{20} Because we affirm the trial court's finding that the complaint fails to state a claim against Defendant, there is no tort, and therefore no personal jurisdiction over Defendant. Based on the foregoing discussion, we affirm the trial court's dismissal of Plaintiff's complaint.

{21} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and JAMES J. WECHSLER, Judge.