2008-NMCA-153

198 P.3d 354

**CAPCO ACQUISUB, INC.,**
Plaintiff–Appellee,

v.

**GREKA ENERGY CORPORATION,**
Defendant–Appellant,

and

Michael Harton, Linda Harton, Joe Ann Duncan (a/k/a Jo Ann Missey and f/k/a Anderson), Robert Wraldo Duncan IV, Allee Thompson, Betty Baum Cooper, Deborah Thompson (f/k/a Debra Ann Campbell), Tom Ray Gainer (as his sole and separate property), and Lela Renee Thomas (as her sole and separate property), Plaintiffs–Appellees,

v.

Greka AM, Inc., Saba Energy of Texas, Incorporated, Strata Various L.C., Tatum Energy, L.C., Capco Acquisub, Inc., Dr. Iftikhar Ahmad, Darsham S. Mundy, Dr. Hamid Ur Rahman, Muhammad Saeed, Kaleem Ahmad Sayed, Seher Enterprises, Inc., and Summer Enterprises, Inc., Defendants–Appellees.

No. 25,642.

Court of Appeals of New Mexico.

Aug. 4, 2008.

Certiorari Denied, No. 31,332, Oct. 6, 2008.

Certiorari Denied, No. 31,335, Oct. 10, 2008.

Reagan & Sánchez, P.A., Mark Terrence Sánchez, Gary Don Reagan, Hobbs, NM, for Appellee Capco Aquisub, Inc.

Keleher & McLeod, P.A., Thomas C. Bird, David W. Peterson, Gary J. Van Luchene, Nikolai N. Frant, Albuquerque, NM, for Appellant.

Johnston & Wolitarsky, P.C., Jeffrey M. Johnston, Stanley E. Crawford, Jr., Midland, TX, for Appellees Michael Harton, et al.

## OPINION

BUSTAMANTE, Judge.

{1} This is the second appeal originating from a judgment entered in a case concerning oil and gas properties in Lea County, New Mexico. The judgment involved two separate lawsuits pending in Lea County District Court that were consolidated for trial: *Capco Acquisub, Inc. v. Greka Energy Corporation*, No. CV–2001–249 (Lea County, N.M., filed July 6, 2001) and *Michael Harton, et al. v. Greka AM, Inc., et al.*, No. CV–2001–417 (Lea County, N.M., filed Oct. 29, 2001). We refer to the former suit as the "Capco Action" and the plaintiffs in that suit as the "Capco Plaintiffs." We refer to the latter suit as the "Harton Action" and the plaintiffs in that suit as the "Harton Plaintiffs."

{2} Following a trial in which Defendant Greka Energy Corporation (GEC) and its subsidiaries, Defendants Greka AM, Inc. (Greka AM) and Saba Energy of Texas, Inc. (Saba) (collectively, the Subsidiaries), failed to appear, the district court entered judgment against all three entities. In the first appeal related to that judgment, we affirmed the district court's denial of the Subsidiaries' motion for extension of time to file a notice of appeal and dismissed the remainder of the Subsidiaries' appeal. *Capco Acquisub, Inc. v. Greka Energy Corporation (Capco I)*, 2007–NMCA–011, ¶ 8, 140 N.M. 920, 149 P.3d 1017. GEC, however, filed a timely notice of appeal, which is the subject of today's opinion.

{3} GEC seeks reversal of the judgment on the following grounds: (1) the district court lacked personal jurisdiction over GEC; (2) the district court should not have permitted the Harton Plaintiffs to add GEC as a defendant to the Harton Action at trial; (3) the district court erred in awarding punitive damages against GEC; (4) the district court erred in disregarding the corporate separateness of GEC and the Subsidiaries; and (5) NMSA 1978, § 53–17–20 (1969), precluded the Capco Plaintiffs from filing suit in New Mexico. We affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

{4} In order to address the issues GEC raises on appeal, it will be helpful to trace the development of the present case from its origins in the separate lawsuits that were eventually consolidated for trial. We look first at the Capco Action, then at the Harton Action, and then follow the consolidation of the cases chronologically.

### The Capco Action

{5} Capco Acquisub, Inc. (Capco) filed a complaint for accounting and payment of monies owing against GEC in Lea County district court on July 6, 2001. Capco alleged that it filed the action on behalf of itself and other "affiliates" who own interests in the Southwest Tatum Prospect, which is an oil and gas development in Lea County. Capco asserted that Saba, or its parent company, operated the subject properties in the Southwest Tatum Prospect, and that GEC assumed operations by virtue of a merger with Saba in March 1999. Capco claimed that Saba's working interest in the Southwest Tatum Prospect is set forth in a joint interest operating agreement, but that the agreement does not set forth the working interests owned by the Capco Plaintiffs.

{6} Prior to the merger, Saba had received on a monthly basis all revenues for the collective ownership interests in the subject properties, deducted the Capco Plaintiffs' share of monthly expenses, and paid the Capco Plaintiffs their respective share of net proceeds. However, following the merger, GEC discontinued paying monthly net proceeds to the Capco Plaintiffs, yet continued to bill the Capco Plaintiffs for their share of expenditures. GEC also refused to provide the Capco Plaintiffs with information regarding production, sales volumes, and revenues. Capco filed the suit seeking judgment for compensatory damages, attorney fees, and interest on the sums owing as determined by an accounting, as well as punitive damages.

{7} GEC filed an answer on September 5, 2001. GEC denied that the working interest of the Capco Plaintiffs was included in Saba's interest and admitted that it was not paying proceeds to the Capco Plaintiffs. GEC also stated as an affirmative defense that the

district court lacked jurisdiction over GEC because GEC is a foreign corporation that is neither operating nor transacting business in New Mexico. On February 4, 2002, GEC filed a motion to dismiss for lack of jurisdiction. On the same date, GEC filed a motion to dismiss the claims of Capco's "affiliates" because Capco was not the real party in interest as to those claims, as well as a motion for summary judgment asserting that Capco's claims were precluded by a settlement agreement between GEC and Capco in another case.

{8} Capco filed a response to GEC's motion to dismiss for lack of jurisdiction, arguing that GEC waived the defense of lack of personal jurisdiction because GEC requested affirmative relief in its answer. On February 9, 2004, prior to ruling on GEC's motion to dismiss, the district court consolidated the Capco Action with the Harton Action.

**The Harton Action**

{9} Michael and Linda Harton filed a pleading styled "petition for declaratory judgment" against GEC, Greka AM, Saba, and Capco, among others, on October 29, 2001. Although GEC is a named defendant in the caption and is mentioned in the introductory paragraph of the petition, GEC is not mentioned throughout the remainder of the petition. The Hartons and other Harton Plaintiffs thereafter filed several amended complaints, each of which omit mention of GEC altogether.

{10} The Harton Plaintiffs alleged that, on or about April 12, 1996, they entered into an oil and gas lease (the Lease) as lessors of land on which the Harton State # 1 Well (the Well) was eventually drilled. Through a succession of assignments and/or mergers, Greka AM became the designated operator of the lands covered by the Lease. The Harton Plaintiffs received their last payment for their interest in production from the Well in July of 2000, and Greka AM thereafter refused to pay the Harton Plaintiffs for their interest in production or proceeds attributable to gas produced from the Well.

{11} The Harton Plaintiffs further claimed that the Lease terminated due to a halt in production that was not remedied in accor-

dance with the Lease. The Lease provides at Paragraph 6 that "this lease shall not terminate if Lessee commences reworking or additional drilling operations within 60 days thereafter and diligently prosecutes the same...." The Harton Plaintiffs alleged that, on August 8, 2001, the Well ceased production due to a mechanical failure of a gearbox, and that Greka AM did not attempt to commence reworking or additional drilling operations within 60 days. Greka AM, despite being informed that its interest in the Lease had terminated and that continued production from the Well would be considered hostile to the Harton Plaintiffs' interest, continued to produce from the Well after October 29, 2001.

{12} The Harton Plaintiffs sought the following relief: (1) a declaratory judgment that the Lease had expired; (2) a judicial decree that the expired Lease no longer conveys a determinable fee mineral interest in the land covered by the Lease (removal of cloud on title); (3) a monetary judgment for past due royalties; (4) a monetary judgment for the value of economically recoverable oil and gas reserves that were drained from the land covered by the Lease; (5) a monetary judgment for the defendants' failure to develop the land covered by the Lease; (6) compensation for slander of title; (7) compensation for bad faith trespass; (8) punitive damages; and (9) attorney fees.

{13} On October 31, 2003, the Subsidiaries filed a motion to dismiss the Harton Action for failure to join indispensable parties and an alternative motion to consolidate pending trials. The Subsidiaries noted in their motion that the Capco Plaintiffs, who were named defendants in the Harton Action, brought a similar suit (the Capco Action) seeking past due royalties attributable to their alleged interests in the Well. The Subsidiaries argued that the Capco Plaintiffs were indispensable parties to the Harton Action under Rule 1–019 NMRA because "if they [the Capco Plaintiffs] are not parties to the [Harton A]ction, Defendant could be 'subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of [their] claimed interests.'" Although the Subsidiaries did not

clarify which defendant or defendants would be subject to multiple or inconsistent obligations, the Subsidiaries acknowledged in their alternative motion to consolidate that the Capco Action was filed against GEC. The Subsidiaries argued that the cases should be consolidated because they involved common questions of law and fact. The district court denied the Subsidiaries' motion to dismiss and entered an order consolidating the cases on February 9, 2004.

**Procedural History Following Consolidation**

{14} On April 1, 2004, the district court administrative assistant sent a notice of trial setting to counsel for all parties in the consolidated case, including counsel for GEC. The notice indicated that the case had been set for non-jury trial on December 7, 2004.

{15} On April 7, 2004, the district court disposed of several motions that were pending in the Capco Action. The district court entered an order denying GEC's motion to dismiss regarding the Capco "affiliates," although the district court stated that the affiliates would have to intervene in the case in order to have their rights vindicated. The district court also denied GEC's motion to dismiss for lack of jurisdiction, finding that the motion "was not filed in conformity with Rule 1–012[(B)] NMRA." Finally, the district court entered an order denying GEC's motion for summary judgment.

{16} On May 3, 2004, the Harton Plaintiffs filed a third amended complaint. While the caption includes GEC as the named defendant in the consolidated Capco Action, the remainder of the pleading excludes mention of GEC. However, the certificate of mailing indicates that a copy of the third amended complaint was sent to Scotty Holloman, of Hobbs, New Mexico, who was counsel for GEC at the time.

{17} On June 7, 2004, Mr. Holloman filed a motion to withdraw as counsel for GEC. Mr. Holloman stated as grounds for the motion that GEC and Mr. Holloman's law firm had disagreements over how to proceed with the case. The motion instructed that "[a]ll notices and pleadings should be sent to [GEC] at Greka Energy Corporation, Attention: Susan Whelan, 3201 Airpark Drive Suite 201[,] Santa Maria, California 93455." The district court entered an order permitting the withdrawal and containing an identical instruction for mailing of notices and pleadings to GEC.

{18} On June 24, 2004, the Capco Plaintiffs, as defendants to the Harton complaint, filed an answer in which they refer to GEC and Greka AM as the "Greka entities." The Capco Plaintiffs state in their answer that the Greka entities deny that, in "a portion of the consolidated cases," the Capco Plaintiffs have any interest in the Lease and that, if the Greka entities prevail on that point, the Capco Plaintiffs should be dismissed as defendants to the Harton Plaintiffs' claims. The Capco Plaintiffs also asserted that "the Defendants Greka are solely empowered to and bear the full responsibility of and liability for operation of the lease[.]"

{19} Additionally, the Capco Plaintiffs incorporated in their answer a cross-claim against Greka AM, GEC, and all other defendants. The Capco Plaintiffs maintained that, if they are adjudged to have interests in the Lease and are obligated to pay damages to the Harton Plaintiffs, then the Capco Plaintiffs should be awarded judgment against Greka AM and GEC, as operator of the Well, for breach of statutory, contractual, and fiduciary obligations to the Capco Plaintiffs for the sum of those damages and for contribution. Counsel for the Capco Plaintiffs attached a proof of service to the answer indicating that the pleading was mailed to all counsel of record.

{20} On July 6, 2004, GEC and the Subsidiaries jointly filed a final disclosure of witnesses. The introductory paragraph states the following: "COMES NOW Defendant Greka AM, [ ], [GEC], and Saba[ ], by and through its [sic] attorneys of record, and hereby submit the following list of lay and expert witnesses who may be called … in this matter." The pleading is signed by Rod M. Schumacher of the firm Atwood, Malone, Turner and Sabin, PA. However, on the same day, Mr. Schumacher filed a motion to withdraw as counsel for GEC and the Subsidiaries. As grounds for the motion, Mr. Schumacher stated that "there no longer exists a

viable attorney/client relationship between the movant and [GEC and the Subsidiaries]."

{21} The Harton Plaintiffs filed an opposition to the motion to withdraw based on their belief that GEC and the Subsidiaries brought about the withdrawal in order to cause delay. The Harton Plaintiffs urged the district court to keep the trial date set for December 7, 2004. The opposition to the motion to withdraw contains a certificate of mailing indicating that a copy of the opposition was sent to Mr. Schumacher, who purported to represent GEC in his motion to withdraw.

{22} On August 5, 2004, the district court entered an order permitting Mr. Schumacher to withdraw as counsel for the Subsidiaries. The order itself makes no mention of GEC, yet directs the Subsidiaries to obtain new counsel by August 27, 2004, or be deemed pro se. The order also states that all previously scheduled dates and deadlines "remain in force and effect." Finally, the order sets forth the following:

Until further notice from such party or its new counsel, all notices required by the New Mexico Rules of Court to be served upon Greka AM[ ] and Saba[ ], shall be directed as follows:

Greka Energy, Inc.
Attention: Susan Whalen, Esquire
6527 Dominion Road
Santa Monica, California 93454
Telephone: 805–357–9294
Fax: 805–347–1072
Saba Energy of Texas, Incorporated
Attention: Susan Whalen, Esquire
6527 Dominion Road
Santa Monica, California 93454
Telephone: 805–357–9294
Fax: 805–347–1072

{23} On August 13, 2004, the Harton Plaintiffs filed a motion to compel discovery against the Subsidiaries, although the motion itself does not mention GEC. The certificate of mailing indicates that the motion to compel discovery was sent to Susan Whalen at the above address in Santa Monica, California—not Santa Maria, California, as indicated in Mr. Holloman's motion to withdraw. After holding a hearing on the motion to compel discovery, at which neither GEC nor the Subsidiaries appeared, the district court entered an order of sanction against the Subsidiaries *and* GEC. The order states the following:

Pursuant to NMRC 1–037, the Court has Ordered that all the defenses in the consolidated cases to the Harton … Plaintiffs' claims against the … Defendants, namely, [GEC], GREKA AM[ ], AND SABA[ ] are struck, as an appropriate sanction for their conscious failure to submit full and complete answer(s) to written discovery and their conscious failure to produce discoverable documents following the Harton … Plaintiffs' repeated attempts to procure same.

The order also states that "all witnesses in the consolidated cases of [GEC and the Subsidiaries] are struck."

{24} The Harton Plaintiffs and the Capco Plaintiffs eventually settled as to the Harton Plaintiffs' claims. Accordingly, the district court entered an order dismissing the Capco Plaintiffs from the suit in their roles as defendants to the Harton Plaintiffs' claims.

{25} The case proceeded to trial on December 7, 2004, although GEC and the Subsidiaries failed to appear. Following trial, the district court entered an amended final judgment against GEC and the Subsidiaries on January 18, 2005. The district court also entered findings of fact and conclusions of law. With respect to GEC, the district court found:

[Regarding the Capco Action]

9. [GEC] and its subsidiary Greka AM[ ] ("the Greka entities" hereafter), assumed operations of these [Harton Lease] properties by virtue of Greka's merger with Saba['s predecessor] in March 1999 and the Saba interests were assigned to the Greka entities, which became the operator, at that time.

. . . .

12. When the Greka entities assumed control of Saba's operations in 1999, the Greka entities as operator discontinued paying the monthly net proceeds to Capco.

13. The Greka entities continued to send cumulative monthly joint interest billings to Capco for Capco's share of expenditures, but the Greka entities refused to provide to Capco any information regarding production, sales volumes, and revenues.

. . . .

15. The Greka entities failed and refused to respond to Capco's demands and did not produce an accounting or send any money to Capco.

. . . .

17. Capco was damaged by the Greka entities' refusal to account and pay monies in the amount of $855,700.00 owing to Capco and by the Greka entities' operation of the leases and failure to market production and protect against drainage, all of which constituted breach of the operating agreement and duties owed to Capco and further damaged Capco by causing Capco to lose its investment of $800,000.00 and to have to defend against the Harton claims and the consequent exposure to liability therefrom.

18. Capco is entitled to judgment against the Greka entities and each of them, jointly and severally, for compensatory damages in the amount of $1,655,700.00 and for attorney fees in the amount of $36,000.00, plus gross receipts tax thereon, and interest on the sum [of] $1,655,700.00 at the rate of 10% per annum from April 1, 1999, until paid.

19. The conduct of the Greka entities constituted malicious, wilful, wanton, and reckless disregard for Capco's interests and entitles Capco to the entry of judgment for punitive damages against the Greka entities and each of them, jointly and severally, in favor of Capco in the amount of $3,000,000.00.

. . . .

21. The Greka entities . . . did not answer or respond to Capco's cross-claims against them [in the Harton Action] and are in default.

[Regarding the Harton Action]

10. Americas Oil and Gas, Inc., formerly Greka AM[ ] is a Colorado corporation, and wholly owned subsidiary of [GEC]. Greka AM's corporate status in New Mexico is that of a non-filer. Greka AM is the successor in interest to an 80% working interest in the Leased Lands, by assignment, from Saba[ ], thus being one of the record lessees to the Leased Lands.

. . . .

13. [GEC] is a Colorado corporation, with its principal offices located at 6527 Dominion Road, Santa Maria, California, 93454. . . . [GEC] has never been qualified to do business in the State of New Mexico.

14. [GEC] employed personnel in Lea County, New Mexico for the purpose of operating the Harton Lease, among others. [GEC] held itself out to be the operator of the Harton Lease, and otherwise directed and controlled the operations conducted upon the Harton Lease.

. . . .

23. Production from the . . . Well ceased on August 8, 2001 due to a gearbox failure.

24. The services of A & M Machine Works were procured by the local [GEC] field supervisor Tracy Headstream to repair the gearbox.

25. . . . . The Court finds the repairs were completed on or before August 13, 2001.

. . . .

30. The gearbox was not reinstalled in the . . . Well until October 29, 2001, some 77 days after the repairs to the gearbox were completed.

31. . . . . Defendants failed to diligently prosecute the repair of the gearbox, and consequently, failed to comply with the 60–day cessation/rework clause found in Paragraph 6 of the Harton Lease. Therefore, the Harton Lease terminated under its own terms.

. . . .

34. Defendants were experienced and seasoned oil and gas operators.

35. There is a quantifiable and undeniable gas/oil ratio in the reservoir underlying the Leased Lands.

36. Defendants flared and/or vented an estimated 98,142 million cubic feet of merchantable gas from the ... Well, the royalty fraction of which is $87,800.

37. Defendants failed on numerous occasions to make gas royalty payments to the royalty owners in the ... Well, totaling $53,100.

38. The total gas royalty payments that are past due and still owing from Defendants is $140,900.

. . . .

43. A reasonably prudent operator would have drilled the Harton # 2 Well no later than May of 1999.

44. The value of the royalty interest in the Harton # 2 Well held by the Harton Plaintiffs is $454,000.

. . . .

46. Defendants are the record lessees and working interest owners of the Leased Lands.

47. As of the date of trial, the Lea County Records show Defendants have failed to release their interests in the Harton Lease and/or the Leased Lands.

. . . .

49. Substantial economic waste and loss of opportunity has occurred due to Defendants' failure to release the Harton Lease of record.

50. The Hartons have been unable to exercise their executive rights while Defendants' interest in the Harton Lease has been on record. Special damages have resulted in that two or more offers to re-lease the Leased Lands have been lost.

51. Defendants' refusal to release the Harton Lease of record was malicious in that the Harton Lease terminated due to Defendants [sic] own negligence and no reasonable cause existed to keep the Harton Lease of record.

. . . .

53. damages suffered due to Defendants' slander of the Harton Plaintiffs' title totals $3,507,300.

. . . .

55. Defendants continued to produce the Leased Lands for a portion of two months after the Harton Lease terminated, wrongfully taking 1,265 barrels of oil and 2,461 million cubic feet of gas totaling $34,300.00 in value, including interest at the rate of 15% per annum as of November 1, 2004.

56. [GEC] represented to the New Mexico Oil Conservation Division that it was the operator of the ... Well.

{26} On February 16, 2005, GEC, now represented by new counsel, filed a motion to vacate the judgment. The district court entered an order denying GEC's motion to vacate on February 24, 2005. GEC timely filed a notice of appeal.

{27} We consolidate the issues GEC raises on appeal as follows: (1) whether the district court lacked personal jurisdiction over GEC, (2) whether the district court erred in allowing the trial amendment adding GEC as a defendant to the Harton Action, (3) whether the district court erred in awarding punitive damages against GEC, and (4) whether the Capco Plaintiffs were precluded from filing suit in New Mexico under Section 53–17–20.

## DISCUSSION

### 1. Personal Jurisdiction

■ {28} "The determination of whether a court has personal jurisdiction over a party is a question of law that is reviewed *de novo.*" *Grover v. Stechel,* 2002–NMCA–049, ¶ 8, 132 N.M. 140, 45 P.3d 80. However, "a district court's conclusions [regarding personal jurisdiction] based upon findings of fact are not disturbed on appeal unless clearly erroneous." *Tercero v. Roman Catholic Diocese,* 2002–NMSC–018, ¶ 5, 132 N.M. 312, 48 P.3d 50 (internal quotation marks and citation omitted).

{29} This issue comes before us in an unusual posture. The district court denied GEC's motion to dismiss for lack of jurisdiction for failure to comply with Rule 1–012(B). However, the district court did not specify the basis for its determination that GEC failed to comply with the rule. GEC asserts that the district court denied the motion

because it erroneously concluded that GEC waived its personal jurisdiction defense by raising it both in its answer and in the motion. Neither the Harton Plaintiffs nor the Capco Plaintiffs appear to challenge GEC's assertion on appeal. However, the Harton Plaintiffs maintain that GEC acquiesced to the district court's jurisdiction through its conduct, namely by: (1) participating in mediation, (2) agreeing to consolidation of the cases, (3) participating in a status conference, and (4) filing a motion for summary judgment.

{30} Alternatively, the Harton Plaintiffs claim that, even if GEC did not waive its personal jurisdiction defense, the facts proved at trial establish that GEC had sufficient minimum contacts with New Mexico to support the district court's exercise of jurisdiction over GEC pursuant to the New Mexico "long-arm" statute, NMSA 1978, § 38–1–16(A) (1971). The Capco Plaintiffs similarly argue that the evidence adduced at trial supports the district court's exercise of jurisdiction over GEC pursuant to Section 38–1–16(A). GEC contends in its reply brief that trial evidence cannot be used to salvage the district court's erroneous legal ruling regarding GEC's motion to dismiss for lack of personal jurisdiction. We first address the issue of waiver and then examine whether we may affirm the district court's exercise of jurisdiction over GEC based on the evidence produced at trial.

## A. Waiver

■ {31} GEC is correct that it did not waive its personal jurisdiction defense by asserting it alongside other defenses in an answer or motion. *See* Rule 1–012(B) ("No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion."); *Williams v. Arcoa Int'l, Inc.*, 86 N.M. 288, 289, 523 P.2d 23, 24 (Ct.App.1974) (holding that "[a] claim of no jurisdiction over the person was not waived by being joined with other defenses"). To the extent the district court denied GEC's motion to dismiss on that basis, the district court's conclusion was in error.

■ {32} The question of whether GEC's conduct in the litigation demonstrated its acquiescence to the district court's jurisdiction presents a closer call. As noted above, GEC filed a motion for summary judgment, filed a motion to dismiss the Capco affiliates' claims, and participated in certain aspects of the pretrial process. We have previously held that a defendant waives the defense of personal jurisdiction when the defendant seeks permissive, affirmative relief from the district court. *Id.* at 290, 523 P.2d at 25. However, GEC's conduct was defensive in nature and did not appear to entail a request for affirmative relief from the district court. Under these circumstances, we are unwilling to say that GEC's conduct amounted to waiver. We now turn to the question of whether the evidence produced at trial can nonetheless serve as a basis for upholding the district court's exercise of jurisdiction over GEC.

## B. Trial Evidence Can Establish the District Court's Jurisdiction Over a Defendant Following an Improperly Denied Motion to Dismiss

■ {33} GEC claims that trial evidence cannot be used to support the district court's erroneous legal ruling on GEC's motion to dismiss for lack of personal jurisdiction. GEC argues that doing so would require us to ignore the legal nature of the district court's ruling. Additionally, GEC claims that it would be unfair for us to rely on trial evidence because the district court erroneously struck all of GEC's defenses and witnesses prior to trial. We reject the latter claim summarily by noting that (1) the district court did not strike GEC's defenses and witnesses with respect to the Capco Action and (2) had GEC appeared at trial it could have challenged the Harton Plaintiffs' evidence through objections and cross-examination.

{34} We have previously held that, when a case proceeds to trial, error resulting from an improperly denied pretrial motion "is not reversible for the result becomes merged in the subsequent trial." *Leithead v. City of Santa Fe*, 1997–NMCA–041, ¶ 6, 123 N.M. 353, 940 P.2d 459 (internal quotation marks

and citation omitted). *But see Chaara v. Lander*, 2002–NMCA–053, ¶ 22, 132 N.M. 175, 45 P.3d 895 (noting that the merger rule does not apply to pretrial motions involving pure questions of law; the rule only applies to improperly denied fact-based motions where "the facts in issue were decided against the movant at a trial on the merits"). GEC is correct that the evidence produced at trial does not affect the legal question of whether GEC waived its personal jurisdiction defense. However, nothing in the district court's erroneous ruling precluded the parties from proving—or contesting—jurisdictional facts at trial.

■ {35} We conclude that our review of the personal jurisdiction issue is not limited to the legal question of waiver and may encompass the entire record. First, as a general matter, we may affirm the district court when it is right for the wrong reason. *Romero v. Prince*, 85 N.M. 474, 476, 513 P.2d 717, 719 (Ct.App.1973). Second, the Rules of Appellate Procedure grant us broad discretion to decide jurisdictional issues on appeal. *See* Rule 12–216(B) NMRA (granting New Mexico appellate courts discretion to review jurisdictional questions that have not been preserved by the parties); *see also Himes Assocs., Ltd. v. Anderson*, 178 Md.App. 504, 943 A.2d 30, 42–43 (2008) (reviewing a personal jurisdiction question based on entire record in light of Maryland appellate courts' broad discretion to review jurisdictional issues). Finally, if facts were proved at trial that support the district court's exercise of jurisdiction over GEC, it would be duplicative—and possibly futile—to remand for another hearing on the jurisdiction issue. Therefore, we will affirm the district court's exercise of jurisdiction over GEC if it is not clearly erroneous in light of the evidence produced at trial. *Tercero*, 2002–NMSC–018, ¶ 5, 132 N.M. 312, 48 P.3d 50.

## C. Long Arm Jurisdiction

■ {36} The New Mexico "long-arm" statute provides, in relevant part, as follows:

Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself ... to the jurisdiction of the courts of this state as to any cause of action arising from:

(1) the transaction of any business within this state;

. . . .

3. the commission of a tortious act within this state.

Section 38–1–16(A)(1) and (3). "Although our long-arm statute enumerates acts that may subject non-resident defendants to personal jurisdiction in New Mexico, the necessity of a technical determination of whether a defendant committed such an act has been removed." *Zavala v. El Paso County Hosp. Dist.*, 2007–NMCA–149, ¶ 10, 143 N.M. 36, 172 P.3d 173. Rather, the question we must answer is whether the defendant "had the requisite minimum contacts with New Mexico to satisfy due process." *Id.* The Capco Plaintiffs and Harton Plaintiffs assert that the trial evidence shows that GEC transacted business and committed torts in New Mexico and that the causes of action brought against GEC arise from these business activities and torts.

{37} The district court's findings and conclusions recited above support the Capco Plaintiffs' and Harton Plaintiffs' contentions. The district court found, among other things, that GEC: (1) assumed operation of the Well, which was located in New Mexico; (2) discontinued paying monthly net proceeds to Capco; (3) ignored Capco's demand for an accounting; (4) failed to market production and protect against drainage; (5) employed personnel in Lea County, New Mexico for the purpose of operating the Harton Lease; and (6) held itself out as the operator of the Harton Lease. These are among the many findings that, if not clearly erroneous, establish GEC's sufficient minimum contacts with New Mexico to confer jurisdiction over GEC.

{38} Our review of the record reveals that the district court's findings are supported by the testimony and documentary evidence submitted at trial. GEC failed to appear at the trial and therefore did not challenge the evidence presented by the Capco Plaintiffs and Harton Plaintiffs. GEC filed a post trial motion to vacate but still did not challenge

the sufficiency of the evidence supporting the district court's findings. Instead, GEC's argument regarding personal jurisdiction focused on the district court's denial of GEC's motion to dismiss on the basis of waiver. Likewise, GEC does not set forth an argument on appeal demonstrating how the district court's findings are clearly erroneous. Accordingly, we conclude that the district court properly exercised jurisdiction over GEC.

## 2. Trial Amendments and Discovery Sanctions

{39} GEC asserts that the district court erred in permitting the Harton and Capco Plaintiffs to amend their complaints at the close of trial. More specifically, GEC claims that the trial amendments violated its due process rights because it had no notice that (1) the Harton Plaintiffs would seek to add GEC as a defendant and (2) the Capco Plaintiffs would add a claim for rescission against GEC. GEC further maintains that the district court erred by imposing discovery sanctions against GEC in response to the Harton Plaintiffs' motion that was directed solely at the Subsidiaries. At oral argument, counsel for the Capco Plaintiffs indicated that the rescission claim had been abandoned, and therefore none of the damages awarded were for any amended cause of action. GEC's counsel then indicated that the problem was one of election of remedies. But election of remedies was never raised in the trial court. We therefore only address GEC's claims regarding the Harton Plaintiffs' trial amendment and the discovery sanctions imposed against GEC.

{40} "We review the district court's grant of a motion to amend for abuse of discretion." *Sanchez v. Saylor*, 2000–NMCA–099, ¶ 30, 129 N.M. 742, 13 P.3d 960. An abuse of discretion occurs when the opposing party suffers prejudice as a result of the amendment. *Id.* Lack of a fair opportunity for the opposing party to defend itself or offer evidence amounts to prejudice. *Id.* We also review discovery orders for abuse of discretion. *Santa Fe Pacific Gold Corp. v. United Nuclear Corp.*, 2007–NMCA–133, ¶ 9, 143 N.M. 215, 175 P.3d 309.

{41} Rule 1–015(C) NMRA governs amendments to pleadings that change a party against whom a claim is asserted and states, in relevant part, as follows:

> An amendment changing the party against whom a claim is asserted relates back [to the date of the original pleading] if ... within the period provided by law for commencing the action against him, the party to be brought in by amendment:
>
> (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and
>
> (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Rule 1–015(C) also applies where the proposed amendment seeks to add a party. *Romero v. Ole Tires, Inc.*, 101 N.M. 759, 762, 688 P.2d 1263, 1266 (Ct.App.1984) (noting that "amendments adding or dropping parties as well as amendments that substitute parties fall within the Rule"). When the party to be added or changed has not been served, the plaintiff has the burden of demonstrating compliance with the notice requirements of Rule 1–015(C)(1) and (2). *Romero v. Bachicha*, 2001–NMCA–048, ¶¶ 11–12, 130 N.M. 610, 28 P.3d 1151.

{42} The Harton Plaintiffs contend that GEC did not suffer prejudice from the trial amendment for several reasons. First, GEC had no defense on the merits that differed from the issues raised by the Subsidiaries prior to trial. Second, as the parent company of the Subsidiaries, GEC had notice of the claims asserted against the Subsidiaries that could also have been asserted against GEC. Third, GEC received notice through its direct involvement in the underlying controversy. For example, GEC actually managed the Lease, was the entity that responded to the Harton Plaintiffs' original demand letter, and participated in various aspects of the litigation prior to trial. Finally, the addition of GEC as a defendant at trial was permissible because of GEC's close identity of interest with the Subsidiaries.

{43} The Harton Plaintiffs do not cite any authority in support of their position that, in order to demonstrate prejudice, GEC must set forth what would have been its meritorious defense at trial. As mentioned above, it is the Harton Plaintiffs' burden to show that GEC received sufficient notice under Rule 1–015(C). We therefore hold that GEC's alleged failure to set forth a meritorious defense was not grounds for the district court to deny GEC's motion to vacate. *See Peralta v. Heights Med. Ctr., Inc.,* 485 U.S. 80, 85, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988) (holding that judgment entered against the defendant without notice or service of process was constitutionally infirm despite defendant's lack of a meritorious defense).

{44} The Harton Plaintiffs' claims regarding GEC's knowledge of the Harton Action against the Subsidiaries and GEC's identity of interest with the Subsidiaries are similarly to no avail. The Harton Plaintiffs cite this Court's opinion in *Galion v. Conmaco International, Inc.,* 99 N.M. 403, 406, 658 P.2d 1130, 1133 (1983), for the proposition that Rule 1–015(C) permits the addition of a party that has a close "identity of interest" with an originally named party. However, the specific question we addressed in *Galion* was "whether, pursuant to [Rule 1–015(C)], a party to be brought in by amendment must receive notice of the action within the time provided by the statute of limitations." *Galion,* 99 N.M. at 404, 658 P.2d at 1131. We noted that "[t]he rationale behind allowing an amendment to relate back is that the statute of limitations should not be used mechanically to prevent adjudication of a claim where the real parties in interest were sufficiently alerted to the proceedings or were involved in them unofficially from an early stage." *Id.* at 406, 658 P.2d at 1133 (internal quotation marks and citation omitted). Conversely, we recognized the concern "that, stretched to its limit, [our] interpretation would permit the addition of a party at any time." *Id.* We addressed that concern by noting that, where there exists a substantial identity of interest, the outer limit of time for notice would be "the reasonable time permitted under the rules of civil procedure for service of process." *Id.; see Bachicha,* 2001–NMCA–048, ¶ 1, 130 N.M. 610, 28 P.3d 1151 (holding that "the time for commencing an action under Rule 1–015(C) is the same as for service of process under Rule 1–004(F) NMRA").

{45} In sum, our holding in *Galion* was not that a plaintiff may at any time add a defendant who has a substantial identity of interest with a previously named defendant. Instead, our holding was that, where a substantial identity of interest exists, the period in which notice must be received is not confined by the statute of limitations, but also includes the reasonable time allowed under the rules of civil procedure for the service of process. *Galion,* 99 N.M. at 407, 658 P.2d at 1134. There still remain the questions of whether GEC received notice of the amendment such that it was not prejudiced and whether GEC knew or should have known that, but for a mistake concerning GEC's identity, the Harton Plaintiffs would have brought the action against GEC.

{46} The Harton Plaintiffs' remaining assertions regarding GEC's involvement in the underlying controversy and GEC's participation in aspects of the litigation do not answer these questions. The factual and procedural history of the consolidated cases demonstrates that the Harton Plaintiffs were understandably confused about GEC's role in the underlying controversy. However, the Harton Plaintiffs' claims regarding GEC's role demonstrate that they had ample information to justify naming GEC as a defendant from the outset. And, in fact, the Harton Plaintiffs did name GEC as a defendant in their original complaint. However, that complaint did not contain any allegations with respect to GEC, and subsequent amendments to the complaint dropped reference to GEC altogether. More importantly, the Harton Plaintiffs never served GEC with process as required by Rule 1–004(C). *See Ortiz v. Shaw,* 2008–NMCA–136, ¶¶ 1, 7, 145 N.M. 58, 193 P.3d 605 (Ct.App. 2008) (reversing default judgment against defendant who, despite actual knowledge of the suit, was never properly served).

{47} We are also unpersuaded that GEC's participation in aspects of the litigation below gave it sufficient notice that it could be added as a defendant to the Harton Action at trial.

The Harton Plaintiffs fail to identify any aspect of GEC's participation in the litigation that went beyond its role as a defendant to the Capco Action. *Cf. Apodaca v. AAA Gas Co.,* 2003–NMCA–085, ¶ 73, 134 N.M. 77, 73 P.3d 215 (stating, in the analogous context of amending pleadings to conform to the evidence when issues are tried by implied consent, that implied consent is absent when the evidence is relevant to issues already within the pleadings). The Harton Plaintiffs correctly point out that GEC had notice of the December 7, 2004, trial setting. However, GEC's notice of that setting as a defendant to the Capco Action does not necessarily amount to notice that it would need to defend itself against the Harton Action. To the contrary, GEC had reason to believe that the Harton Plaintiffs decided not to pursue claims against it because they never served GEC with process and deleted all reference to GEC from their pleadings.

{48} Moreover, GEC's failure to appear at trial to defend itself in the Capco Action, while incredibly unwise, cannot justify a judgment against it in the Harton Action based on a trial amendment for which GEC had no notice or opportunity to defend. The critical issue is whether the timing of the amendment was prejudicial to GEC. We have previously stated that "[a] defendant added after trial would have no opportunity to defend itself on the merits, as the proceedings would already have concluded." *Wirtz v. N.M. Educ. Ret. Bd.,* 1996–NMCA–085, ¶ 20, 122 N.M. 292, 923 P.2d 1177. Under these circumstances, contrary to Rule 1–015(C), "a newly added defendant will suffer prejudice in maintaining its defense on the merits." *Wirtz,* 1996–NMCA–085, ¶ 20, 122 N.M. 292, 923 P.2d 1177.

{49} We conclude that the amendment adding GEC as a defendant to the Harton Action followed by immediate entry of a money judgment against it violated Rule 1–015(C)(1) because, under the circumstances of this case, GEC did not have sufficient notice of, and was prejudiced by, the amendment. Additionally, the judgment against GEC in the Harton Action violated GEC's due process rights. *See Peralta,* 485 U.S. at 84, 108 S.Ct. 896 ("[A] judgment entered

without notice or service is constitutionally infirm[.]"). Adding GEC as a party was permissible, but we vacate the district court's judgment against GEC with respect to the Harton Action and remand.

{50} We also vacate the district court's order imposing discovery sanctions against GEC. GEC was not a party to the Harton Action, and the Harton Plaintiffs did not file their motion to compel discovery against GEC. Although there was understandable confusion regarding the roles of GEC and the Subsidiaries in the underlying dispute, the proper avenue for resolving that confusion would have been for the Harton Plaintiffs to name GEC as a defendant and serve it with discovery requests. Again, the Harton Plaintiffs had ample information regarding GEC's possible involvement in the underlying controversy to justify naming GEC as a defendant.

{51} However, because GEC was not a party to the Harton Action, the district court was without authority to strike GEC's witnesses and defenses with respect to the Harton Action. At most, the district court had the authority to hold GEC in contempt as a nonparty. *See Smith v. FDC Corp.,* 109 N.M. 514, 523, 787 P.2d 433, 442 (1990) (holding that, under Rule 1–037 NMRA, only contempt is available as a discovery sanction against a nonparty; the broader sanctions available under Rule 1–037(B)(2) "may only be directed against a nonresponsive *party* "). We conclude that the district court abused its discretion by imposing discovery sanctions against GEC because GEC was not a party to the Harton Action and because the Harton Plaintiffs never served GEC with discovery requests.

### 3. Punitive Damages

{52} In light of our holding that the district court erred in permitting the trial amendment adding GEC as a defendant to the Harton Action, GEC's claim regarding the Harton Plaintiffs' punitive damages award is moot. We therefore solely address GEC's claim with respect to the Capco Plaintiffs' punitive damages award, which GEC assails on two fronts. First, GEC claims that the award was not supported by sub-

stantial evidence. Second, GEC asserts that the award violated GEC's substantive due process rights.

{53} Our review of the record indicates that this issue was not preserved for appellate review because GEC did not invoke a ruling by the district court. *See* Rule 12–216(A) NMRA ("To preserve a question for review, it must appear that a ruling or decision by the district court was fairly invoked[.]"). GEC, in its statement of preservation on punitive damages generally, cites portions of its motion to vacate. However, GEC's motion to vacate was directed largely at the effects of the trial amendment adding GEC to the Harton Action. The brief in support of the motion to vacate contains only a single sentence referring to the judgment in favor of the Capco Plaintiffs: "The Judgment entered for Capco is . . . 'different in kind from or exceeds the amount prayed for' in Capco's demand for judgment, and should . . . be vacated pursuant to Rule 1–054[ (C) NMRA]."

{54} GEC fails to point to—nor can we find—any portion of the record demonstrating that GEC made—or the district court considered—the arguments GEC made on appeal. GEC's conclusory reference to Rule 1–054(C) does not suffice to put the district court on notice regarding the alleged substantial evidence and substantive due process shortcomings of the award. This case is therefore unlike *Aken v. Plains Electric Generation & Transmission Cooperative, Inc.,* 2002–NMSC–021, ¶¶ 9–10, 132 N.M. 401, 49 P.3d 662, in which our Supreme Court considered a challenge to a punitive damages award because the record showed that the defendant properly raised the issue in a motion for reconsideration. Accordingly, we will not consider GEC's claims regarding the punitive damages award in favor of the Capco Plaintiffs.

### 4. GEC Waived Its Affirmative Defense Under Section 53–17–20

{55} GEC maintains that the Capco Plaintiffs were precluded from filing suit under Section 53–17–20(A), which provides that "[n]o foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this state, until the corporation has obtained a certificate of authority." GEC raised this issue for the first time in its motion to vacate the judgment. "Generally the courts have held that failure to plead an affirmative defense results in the waiver of that defense; and it is excluded as an issue." *United Nuclear Corp. v. Gen. Atomic Co.,* 93 N.M. 105, 120, 597 P.2d 290, 305 (1979); *see* Rule 1–008(C) NMRA ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . any other matter constituting an avoidance or affirmative defense."); Rule 1–012(H) (regarding waiver or preservation of certain defenses).

{56} GEC argues that the Capco Plaintiffs' failure to allege in their complaint that Capco had a certificate of authority constituted a failure to state a valid claim for relief. GEC cites the case of *Sundance Mechanical & Utility Corp. v. Atlas,* 109 N.M. 683, 688, 789 P.2d 1250, 1255 (1990), for the proposition that the defense of failure to state a claim upon which relief can be granted can be raised at any time, including on appeal. However, GEC can only invoke *Sundance Mechanical & Utility Corp.* if the Capco Plaintiffs' omission amounts to a failure to state a valid claim for relief. We are not persuaded that it does.

{57} First, GEC cites no authority to support its claim that a foreign corporation must allege that it has obtained a certificate of authority under Section 53–17–20(A) in order to state a valid claim for relief. Instead, GEC attempts to analogize the requirements of Section 53–17–20(A) to those of NMSA 1978, § 60–13–30(A) (1977), which was the statute at issue in *Sundance Mechanical & Utility Corp.* Section 60–13–30(A) governs suits by contractors to recover compensation for contracting work, and provides that

[n]o contractor shall act as agent or bring or maintain any action in any court of the state for the collection of compensation for the performance of any act for which a license is required by the Construction Industries Licensing Act without alleging and proving that such contractor was a

duly licensed contractor at the time the alleged cause of action arose.

*Sundance Mech. & Util. Corp.*, 109 N.M. at 687, 789 P.2d at 1254.

{58} Section 53–17–20(A) is not analogous to Section 60–13–30(A) because the latter contains specific language regarding a pleading requirement, while the former contains no express or implied pleading requirement. The sole requirement of Section 53–17–20(A) is that a plaintiff obtain a certificate of authority in order to bring or maintain an action in New Mexico. *Cf. Riblet Tramway Co. v. Monte Verde Corp.*, 453 F.2d 313, 317 (10th Cir.1972) (noting that predecessor to Section 53–17–10(A) "creates only a temporary disability which can be overcome ... by complying with the corporate authorization provisions then in force"). Further weakening GEC's argument is the fact that, in *Sundance Mechanical & Utility Corp.*, our Supreme Court held that the plaintiff contractor's failure to allege that he was licensed at the time he performed the work was not fatal where the defendant failed to raise the issue before trial and the parties tried the issue by consent. 109 N.M. at 690, 789 P.2d at 1257.

{59} Second, the relevant case law indicates that compliance with so-called "closed door" statutes, such as Section 53–17–20(A), raises a question regarding the plaintiff's capacity to sue. *See, e.g., Zelinger v. Uvalde Rock Asphalt Co.*, 316 F.2d 47, 53 (10th Cir.1963) ("[T]he failure of a foreign corporation to comply with the cited [closed door] statute goes to its capacity to sue[.]"); *Chet Adams Co. v. James F. Pedersen Co.*, 307 S.C. 33, 413 S.E.2d 827, 829 (1992) ("[C]ompliance with this [closed door] statute affects a foreign corporation's capacity to sue[.]"); *Fin Ag, Inc. v. Hufnagle, Inc.*, 700 N.W.2d 510, 515 (Minn.Ct.App.2005) ("[T]he right to maintain an action relates to the capacity to sue[.]" (internal quotation marks and citation omitted), *aff'd*, 720 N.W.2d 579 (Minn.2006)). We agree with those jurisdictions holding that a plaintiff's compliance with Section 53–17–20(A) involves a question regarding the plaintiff's capacity to sue.

{60} A defendant wishing to assert the defense of a plaintiff's lack of capacity to sue must comply with Rule 1–009(A) NMRA. Rule 1–009(A) provides that "[w]hen a party desires to raise an issue as to ... the capacity of any party to sue or be sued ... [such party] shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge." Our Supreme Court has held that the issue of a plaintiff's capacity to sue is waived if not raised by motion or answer. *Hugh K. Gale Post No. 2182 VFW v. Norris*, 53 N.M. 58, 62, 201 P.2d 777, 779 (1949); *see Zelinger*, 316 F.2d at 53 (holding that failure to comply with a closed door statute "is a matter of defense to be pleaded by the defendant in bar of the action"); *Chet Adams Co.*, 413 S.E.2d at 829 ("[T]he defense of capacity to sue can be waived by a defendant if not raised."); *Fin Ag, Inc.*, 700 N.W.2d at 515 ("Unlike challenges to standing and subject-matter jurisdiction, a challenge to a litigant's capacity to sue is waivable."). *Cf. Hammond Screw Mach. Co. Ltd. v. Sullivan*, No. 83 C 1250, 1985 WL 783 at *1 (N.D.Ill. Apr. 19, 1985) (Mem.) (holding that, "no matter how the defense [of failure to obtain a certificate of authority] is characterized, it is waived if the defense is not raised in an answer or in a timely Rule 12(b) motion"). Accordingly, we conclude that GEC waived this issue by failing to raise it as an affirmative defense in its answer or by motion.

**CONCLUSION**

{61} We reverse the judgment of the district court against GEC with respect to the Harton Action, as well as the order imposing discovery sanctions against GEC, and remand for further proceedings. The judgment against GEC in the Capco Action is affirmed in all respects.

{62} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and RODERICK T. KENNEDY, Judges.