This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37201**

**SUSAN E. SELIGMAN,**

Petitioner-Appellee,

v.

**ALLEN MEILACH,**

Respondent-Appellant,

**IN THE MATTER OF DONA Z. MEILACH AND MELVIN M. MEILACH TRUST.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

L. Helen Bennett
Albuquerque, NM

Laflin, Pick & Heer P.A.
Daniel Pick
Joseph Wiseman
Albuquerque, NM

for Appellee

Allen Meilach
Los Angeles, CA

Pro Se Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Allen Meilach appeals two district court orders entered following Susan Seligman's petition (the Petition) to approve the distribution of trust property and otherwise allow her to take measures toward terminating the trust: (1) the order affirming the district court's jurisdiction to hear the case; and (2) the final order substantially granting Seligman's request. We affirm.

**BACKGROUND**

**{2}** Throughout the proceedings below, the parties put forth little competent evidence for the district court to consider; nevertheless, the court was able to recognize sufficient, apparently agreed-on facts to make the two challenged rulings. The court relied on much of the following.

**{3}** The trust at issue is the Dona Z. Meilach and Melvin M. Meilach Trust, created in California by Meilach and Seligman's parents, Dona and Melvin, who were the original co-trustees. The trust appears to consist of movables, including equities, annuities, and bonds. The trust instrument names no place where the trust is to be administered, but does include a choice-of-state-law provision: "All questions concerning the validity, interpretation, and administration of [the] instrument . . . shall be governed by the laws of the State of California, regardless of the domicile of any trustee or beneficiary."

**{4}** Upon Dona's death, Melvin became the sole trustee in accordance with the trust instrument. Melvin then moved to New Mexico, his final residence. When he died, Meilach and Seligman became co-successor trustees, as provided by the instrument. They also became the trust's only beneficiaries, entitled to an equal distribution of trust assets remaining at Melvin's death.

**{5}** Some years after Melvin died, Seligman, a New Mexico resident, filed the Petition; in it she asked the district court to (1) approve the equal distribution of trust assets in excess of $5,000; (2) approve the establishment of a reserve in that amount to be used for the payment of final trust debts, taxes, and administrative expenses; and (3) grant her sole authority as trustee to make the distribution and establish the reserve. She indicated that she and Meilach "do not get along, . . . cannot communicate with each other and cannot co-exist as [c]o-[t]rustees of the [t]rust."

**{6}** Meilach, a California resident, filed a pro-se response opposing the Petition. In part, he challenged the district court's jurisdiction, taking the position that only a California court had jurisdiction to address issues related to the administration of the trust. He did not specify the type of jurisdiction (e.g., subject matter or personal) he claimed was lacking. Meilach also stated that he was preparing a petition to a California court outlining his proposal for trust distribution.[1] Additionally, Meilach requested that the district court reprimand Seligman's attorney "for filing a frivolous petition." He made further requests of the court: that it (1) award him attorney fees for having been the "subject of a frivolous petition" and for having suffered financial loss due to Seligman's

---

1There is no evidence Meilach ever filed this petition.

"failure to perform" with respect to the trust; (2) "decide the size of the damage award" to compensate him for such injuries; (3) "apprise [him] of any other legal motions or actions that need to be taken in [New Mexico], if any, pursuant to his filing an analogous petition in California"; and (4) order "[a]ny other remedies the court finds appropriate."

**{7}** The district court scheduled a hearing on the Petition. Meilach filed a motion requesting that the hearing be conducted telephonically, citing as reasons the inconvenience and expense of having to attend in person. Seligman initially opposed the motion. In his reply in support of his request for a telephonic hearing, Meilach challenged the proposed reserve amount, saying it should be $300,000, but otherwise agreed it was proper for the parties to receive an equal distribution of the balance of trust assets. Seligman later withdrew her objection to Meilach's motion.

**{8}** The district court then held a hearing on the Petition at which Meilach appeared by telephone. Meilach argued that a California court was the proper forum for the proceedings but acknowledged that "reasonable arguments" could support New Mexico courts' exercise of jurisdiction. He then made arguments on the Petition's merits, reiterating that he agreed with Seligman that the majority of the trust's assets should be distributed, stating, "We just disagree on the amount of the reserve." Meilach explained that a larger reserve than that proposed by Seligman should be ordered until such time as certain "outstanding issues" were resolved, including his ability to review certain paper bonds and bills in Seligman's possession.

**{9}** Before ending the hearing, the district court told the parties they could file supplemental pleadings addressing their respective positions. Each party did so. In Meilach's case, he argued against Seligman's request for sole authority as a trustee, adding that, "[i]f *one* [co-]trustee should be given total control of the trust, *only* [*he*] is qualified."

**{10}** The district court then entered the orders from which Meilach appeals. In the first, the court concluded it had jurisdiction and denied Meilach's request to dismiss the case. The second, final order was on the merits of the Petition. In it, the court substantially granted Seligman's requests, though not as to the reserve amount. Instead of $5,000, as she requested, or $300,000, as Meilach requested, the court ordered that $100,000 be set aside: $50,000 each "for the payment of final debts, taxes, expenses of administration and as might otherwise be appropriate[.]" The court further ordered Seligman to establish the reserve and distribute the balance of trust assets equally, with the exception of the reserve. Lastly, the order provided that "petitioner Meilach"[2] was to file monthly reports delineating payments from the reserve "until this case is closed."

**{11}** According to Seligman, Meilach did not file a supersedeas bond under NMSA 1978, Section 39-3-22(A) (2007) to stay execution on the final order, but he did file a motion in the district court for a stay pending appeal. The court denied the motion. Also according to Seligman, and as conceded by Meilach, the distribution was made, and the reserve was established, in compliance with the final order.

---

2This reference to Meilach as the petitioner appears to be a clerical error.

**DISCUSSION**

**{12}** Meilach does not contest the distribution of the assets nor the establishment of the $100,000 reserve. Instead, he claims the district court erred in determining it had jurisdiction. He additionally contends Seligman has engaged in malfeasance in the distribution of trust assets, pursuant to the district court's final order. We address each of Meilach's contentions in turn.

**I.     The District Court Correctly Decided That It Has Jurisdiction Over the Trust Proceedings**

**{13}** Meilach first argues that the trust-related contacts and relationships give only California courts jurisdiction.[3] We review questions of jurisdiction de novo. *See Giddings v. SRT-Mountain Vista, LLC*, 2019-NMCA-025, ¶ 10, 458 P.3d 596. As an initial matter, Meilach is mistaken to presume that only one of the two states' courts has jurisdiction; rather, "[t]he spheres of state court authority overlap, so that a specific controversy may be within the judicial authority of more than one state." Restatement (Second) of Judgments § 4 cmt. b (1982). Because this proceeding was brought in a New Mexico court, the compelling question is whether New Mexico's district court is a proper forum for it.

**{14}** Whether the district court is a proper forum implicates federal constitutional law. This is because the Due Process Clause of the United States Constitution's Fourteenth Amendment limits the states' power to exercise jurisdiction over actions and parties: they may do so only if the exercise is reasonable. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). Such a reasonable basis is found where the courts of a state have the necessary "affiliating circumstances" to "enter a judgment imposing obligations on persons (jurisdiction in personam) or affecting interests in property (jurisdiction in rem or quasi in rem)." *Hanson v. Denkcla*, 357 U.S. 235, 246 (1958).

**{15}** Both types of jurisdiction are relevant here. The final order purports to obligate Meilach to "file a monthly report . . . delineating payments made from the reserve," thereby necessitating the district court's personal jurisdiction over him for that aspect of the order to be effective. In addition, the final order includes the court's determination of the parties' interests in the trust property, providing "it is clear that the parties are each

---

3As we explore below, Meilach challenges the district court's personal jurisdiction over him and in rem jurisdiction over the trust—arguing in short that California, not New Mexico, is the appropriate forum to resolve questions pertaining the trust. Contrary to the district court's order and Seligman's brief, Meilach's argument does not appear to be one relating to subject matter jurisdiction, or "the power to adjudicate the general questions involved in the claim[.]" *Ping Lu v. Educ. Tr. Bd. of N.M.*, 2013-NMCA-010, ¶ 8, 293 P.3d 186 (internal quotation marks and citation omitted). New Mexico's district courts, as courts of general jurisdiction, "hav[e] the power to hear all matters not excepted by the constitution and those matters conferred by law." *Id*. ¶ 9 (internal quotation marks and citation omitted). Here, the matter concerns a trust. New Mexico's Uniform Trust Code, NMSA 1978, §§ 46A-1-101 to -11-1105 (2003, as amended through 2018), broadly empowers district courts to hear such matters: it provides that "[t]he district court has exclusive jurisdiction of all proceedings involving a trust[,]" § 46A-2-203; and "[a] judicial proceeding involving a trust may relate to any matter involving the trust's administration," § 46A-2-201(C).

entitled to 50% of the assets of the Trust." We therefore consider whether the court has (1) personal jurisdiction over Meilach; and (2) in rem jurisdiction over the trust.

## A.     Personal Jurisdiction

**{16}**     Concerning the district court's personal jurisdiction over Meilach, Seligman argues that, to the extent that Meilach's jurisdictional challenge represents an objection to the district court's lack of personal jurisdiction over him, Meilach's conduct evinced a waiver of that objection. We agree.

**{17}**     "The defense of lack of personal jurisdiction is subject to waiver when not properly asserted." *Trei v. AMTX Hotel Corp.*, 2014-NMCA-104, ¶ 15, 336 P.3d 393 (internal quotation marks and citation omitted). "Typically, a waiver occurs when a defendant fails to raise the defense in a responsive pleading or a Rule 1-012 NMRA motion." *Trei*, 2014-NMCA-104, ¶ 15. However, even where a party raises the defense in an answer, the party can be deemed to have waived the defense by exhibiting certain conduct, such as extensive participation in litigating the case. *See id.*

**{18}**     What kind of conduct overcomes the threshold for waiver? This Court has addressed that question at least three times. In *Williams v. Arcoa International, Inc.*, 1974-NMCA-037, 86 N.M. 288, 523 P.2d 23, we held that the defendants submitted themselves to the district court's jurisdiction by their act of filing a third-party complaint, *see id.* ¶¶ 15, 19, despite the defendants' attempt to preserve the jurisdictional defense within the complaint. *See id.* ¶ 16. Our holding hinged on the fact that the action was not required but rather constituted the filing of a permissive counterclaim invoking the court's jurisdiction. *See id.* ¶ 15.

**{19}**     Conversely, in *Capco Acquisub, Inc. v. Greka Energy Corp.*, 2008-NMCA-153, 145 N.M. 328, 198 P.3d 354, we rejected the plaintiff's waiver argument. The defendant there participated in mediation, participated in a status conference, agreed to consolidate cases, and moved for summary judgment. *Id.* ¶ 29. We declined to treat this as conduct demonstrating acquiescence to the district court's jurisdiction because the conduct "was defensive in nature and did not appear to entail a request for affirmative relief from the district court." *Id.* ¶ 32.

**{20}**     Later, in *Trei*, we reached the same conclusion under different facts: the defendant there sought certain relief in its answer to the complaint and also made initial discovery requests. 2014-NMCA-104, ¶¶ 14, 18. Namely, the defendant requested to "be discharged from all liability and recover its costs." *Id.* ¶ 14 (alteration, internal quotation marks, and citation omitted). We concluded that the conduct did not constitute waiver because, as to the requested relief, the relief was sought in an answer to the complaint, which "is defensive in nature[.]" *Id.* ¶ 17. As to the discovery requests, we reasoned that deeming those actions waiver would "penalize [the d]efendant for requesting information that would be relevant to the subject matter of the action [while it was] awaiting the district court's ruling on . . . jurisdiction." *Id.*

**{21}** Meilach's actions, in contrast, were neither wholly defensive in nature nor undertaken outside the view of the district court while awaiting its jurisdictional ruling. Meilach instead took "affirmative action inconsistent with the position of not being properly before the district court." *Williams*, 1974-NMCA-037, ¶ 11; *cf. Capco*, 2008-NMCA-153, ¶ 32.

**{22}** Beginning with his answer to the Petition, Meilach sought attorney fees, in part for Seligman's alleged filing of a frivolous petition and otherwise for her alleged failures in trust administration, sought an award of damages, asked the district court to "decide the size of the damage award," requested "other remedies," generally, and sought instruction from the district court on how to proceed. This was not merely defensive action, but rather an appeal to the district court for at least some evaluation of the Petition's merits and of Seligman's past conduct and for corresponding relief.

**{23}** Meilach next filed a motion for a telephonic hearing, which led to his filing a pleading in which he laid out a proposal for managing the trust assets and in which he asked for a $300,000 reserve. Here, too, he called on the district court to exercise its discretion in his favor, both procedurally and substantively.

**{24}** Meilach then appeared at the hearing on the Petition. First he argued that California courts had jurisdiction, then he proceeded to argue—at considerably greater length—the merits of the Petition. In particular, he advocated for "a major distribution," a $300,000 reserve, and his exclusive control over the trust. Later, in his post-hearing pleading, Meilach reiterated his position that he alone was qualified to administer the trust.

**{25}** In sum, Meilach took—at best—the qualified position that the district court lacked jurisdiction over him. That is, he raised a jurisdictional defense but later drew back from it. Throughout the proceedings, he made his positions regarding trust administration clear to the court and—tacitly, if not explicitly—invited it to adopt his positions in its ruling. Implicit in that invitation and in his requests for a fee award and judicial guidance was a recognition of the court's jurisdiction over him. Such a contradiction in stance on the matter of jurisdiction is untenable. *See Williams*, 1974-NMCA-037, ¶¶ 15-16. Moreover, it signals Meilach's acquiescence to the court's jurisdiction and his waiver of any personal-jurisdiction defense. *See id.* ¶ 15. Accordingly, we hold that Meilach submitted himself to the jurisdiction of the district court.

## B.    In Rem Jurisdiction

**{26}** We turn now to the second aspect of the jurisdictional question: the district court's jurisdiction over the trust property. "The basis of [in rem] jurisdiction is the presence of the subject property within the territorial jurisdiction of the forum [s]tate." *Hanson*, 357 U.S. at 246. "Tangible property poses no problem for the application of this rule, but the situs of intangibles is often a matter of controversy." *Id.* at 246-47; *see also* Restatement (Second) of Judgments § 6 cmts. d, e. Here, the situs of the trust's intangible, movable assets is not in controversy—but it has not been ascertained. The

district court made no finding on the matter. Be that as it may, the district court may still adjudicate interests in the trust if its relationship to New Mexico meets the minimum-contacts standard. *See Shaffer v. Heitner*, 433 U.S. 186, 207 (1977) (concluding that "in order to justify an exercise of jurisdiction in rem, the basis for jurisdiction must be sufficient to justify exercising jurisdiction over the interests of persons in a thing" and that "[t]he standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard" (internal quotation marks and citation omitted)).

**{27}** Seligman had the burden below of making a prima facie showing that the trust's contacts with New Mexico met that standard. *See Zavala v. El Paso Cty. Hosp. Dist.*, 2007-NMCA-149, ¶ 13, 143 N.M. 36, 172 P.3d 173. As noted, the district court found that New Mexico is the domicile of its once-sole trustee, Melvin, and the domicile of its co-beneficiary and current co-trustee, Seligman. It further found that after Dona died, when Melvin moved to New Mexico, the state became the trust's principal place of administration and remained so until Melvin's death.

**{28}** According to the district court, New Mexico remained the principal place of administration even after Melvin's death.[4] Meilach put forth no competent evidence to contradict that finding; this was in spite of his bearing the burden of refuting facts adverse to his position and otherwise establishing that the court's exercise of jurisdiction over the trust would offend due process. *See Moore v. Graves*, 1982-NMCA-170, ¶ 14, 99 N.M. 129, 654 P.2d 582 (noting that when minimum contacts are established, the burden shifts to the non-resident party to rebut that conclusion).

**{29}** Given that the minimum-contacts standard "extend[s] the scope of state court jurisdiction in the forum[,]" *id.*, that "New Mexico is interested in providing this forum[,]" *id.*, and that "[l]ocating a trust's principal place of administration will ordinarily determine which court has primary if not exclusive jurisdiction over the trust[,]" Unif. Trust Code § 108 cmt. (Unif. Law Comm'n 2000), we conclude that the district court had and continues to have jurisdiction over the trust. As the principal place of trust administration and as the domicile of one of its current co-trustees and co-beneficiaries, New Mexico has contacts with the trust sufficient to make its judicial jurisdiction over it reasonable. Notably, Meilach cites no authority that invalidates this conclusion. Accordingly, we assume no such authority exists. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482; *see also Goodman v. OS Rest. Servs., LLC*, 2020-NMCA-019, ¶ 16, 461 P.3d 906, *cert. dismissed* (No. S-1-SC-37873, Jan. 13, 2020) ("[O]n appeal, there is a presumption of correctness in the rulings and decisions of the district court, and the party claiming error must clearly show error." (alterations, internal quotation marks, and citation omitted)). All considered, the district court correctly decided that it had jurisdiction over the proceedings.

## II.      Meilach Fails to Demonstrate Any Error in the Final Order

---

4The district court remarked, "There has been no showing that administration of the Trust, totally or partially, has left New Mexico."

**{30}**     Meilach's next set of arguments concern the final order. Again, Meilach does not contest the distribution of the assets or the establishment of the reserve. His complaint instead appears to consist entirely of allegations that Seligman has acted maliciously and negligently in carrying out the order.

**{31}**     These claims of malfeasance, however, are beyond our review. "[O]ur appellate jurisdiction is limited to review of any final judgment or decision, 'any interlocutory order or decision which practically disposes of the merits of the action, or any final order after entry of judgment which affects substantial rights.' " *Capco Acquisub, Inc. v. Greka Energy Corp.*, 2007-NMCA-011, ¶ 17, 140 N.M. 920, 149 P.3d 1017 (alteration omitted) (quoting NMSA 1978, § 39-3-2 (1966)). Meilach's allegations regarding Seligman's post-order actions should be raised in district court, not raised for the first time on appeal. *See In re Guardianship of C.G.*, 2020-NMCA-023, ¶¶ 31-32, 463 P.3d 487 (reminding the appellant that "we ordinarily do not address matters not ruled on in the order appealed from" and that "we do not consider arguments not made in the district court"). In sum, we see no basis for disturbing the final order.

**CONCLUSION**

**{32}**     We affirm.

**{33}     IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**JENNIFER L. ATTREP, Judge**